GODFREY LUMBER COMPANY, INC., PLAINTIFF-APPELLANT v. A. PRESTON HOWARD, JR., DIRECTOR OF THE NORTH CAROLINA DEPARTMENT OF ENVIRONMENT AND NATURAL RESOURCES, DIVISION OF WATER QUALITY IN HIS INDIVIDUAL CAPACITY AND IN HIS OFFICIAL CAPACITY, AND KERR "TOMMY" STEVENS, DIRECTOR OF THE NORTH CAROLINA DEPARTMENT OF ENVIRONMENT AND NATURAL RESOURCES, DIVISION OF WATER QUALITY IN HIS OFFICIAL CAPACITY; NORTH CAROLINA DEPARTMENT OF ENVIRONMENT AND NATURAL RESOURCES; AND NORTH CAROLINA ENVIRONMENTAL MANAGEMENT COMMISSION, DEFENDANT-APPELLEES

No. COA01-1016

(Filed 6 August 2002)

**Constitutional Law— due process—revocation of stormwater permit**

Plaintiff was not deprived of a stormwater permit unconstitutionally where the permit was issued, construction began on plaintiff's chip mill, the permit was revoked for non-compliance

with regulations, plaintiff requested a contested case hearing, the revocation was reversed, plaintiff filed this action for damages incurred during the revocation, and the trial court granted defendants' motion for summary judgment. Defendants provided due process through the contested case hearing, plaintiff eventually had the permit restored, and plaintiff did not petition for a stay during the contested case hearing.

Appeal by plaintiff from an order entered 26 January 2001 by Judge Howard E. Manning, Jr. in Superior Court, Wake County. Heard in the Court of Appeals 24 April 2002.

*Harris & Winfield, LLP, by R. Sarah Compton, for plaintiff-appellant.*

*Attorney General Roy Cooper, by Special Deputy Attorney General David Roy Blackwell and Assistant Attorney General Jill B. Hickey, for defendant-appellees.*

McGEE, Judge.

Godfrey Lumber Company, Inc. (plaintiff) is a North Carolina corporation which operates a lumber mill and a wood chip mill in Statesville, North Carolina. In late 1994, plaintiff decided to construct another wood chip mill in Stokes County, North Carolina and began making preparations for this construction, including meeting in March 1995 with representatives of the Division of Water Quality (DWQ) of the N.C. Department of Environment and Natural Resources. DWQ told plaintiff that the only permit plaintiff would need for the new facility was a general stormwater permit. Plaintiff submitted an application to DWQ for a stormwater permit on 4 April 1995. DWQ, through A. Preston Howard (Howard), issued the permit on 14 July 1995.

Plaintiff began construction of its new chip mill in January 1997. Plaintiff had contacts with DWQ during the construction of the mill. DWQ inspected plaintiff's mill on 21 November 1997. After the inspection, Howard signed a letter revoking plaintiff's permit on 24 November 1997 and cited non-compliance with the conditions of applicable regulations and permits as the reason for the revocation. Howard stated that the spraying of logs on plaintiff's site would result in a wastewater flow that would reach the area wetlands. The letter stated in order for plaintiff to discharge wastewater into the wet-

lands, plaintiff needed to apply for an individual permit. The letter provided appeal remedies if plaintiff chose to dispute the revocation.

Plaintiff filed a petition for a contested case hearing on 22 December 1997. An administrative law judge issued a recommended decision on 17 July 1998, determining the revocation was erroneous and should be reversed. The Environmental Management Commission adopted the recommended decision on 18 December 1998 and ordered that the revocation be reversed. Plaintiff filed suit in this case alleging a violation of due process and seeking to recover damages incurred during the period its permit was revoked and was being reviewed through the contested case hearing. On 18 September 2000, plaintiff filed a motion for partial summary judgment and defendants filed a motion for summary judgment. The trial court granted defendants' motion for summary judgment on 26 January 2001. Plaintiff appeals from this order.

I.

Plaintiff first argues the trial court erred in granting defendants' motion for summary judgment because the trial court's conclusions of law were not supported by its findings of fact. Plaintiff contends that when Howard revoked the permit, this was a final deprivation of the permit. Plaintiff contends the trial court's conclusion that there was "no final deprivation" of plaintiff's permit is not supported by the trial court's findings, since the court found as a fact that Howard sent a letter to plaintiff which stated, "I am hereby revoking" the permit. The trial court concluded as a matter of law "that the safeguards of [N.C. Gen. Stat. § 150B] provided [plaintiff] constitutionally adequate due process of law and that there was no final deprivation of [plaintiff's] Certificate of Coverage."

"While the United States Supreme Court has consistently held that some form of hearing is required prior to a final deprivation of a 'protected' property interest, the exact nature and mechanism of the required procedure will vary based upon the unique circumstances surrounding the controversy." *Peace v. Employment Sec. Comm'n,* 349 N.C. 315, 322, 507 S.E.2d 272, 278 (1998). The due process clause encompasses

a guarantee of fair procedure. A § 1983 action may be brought for a violation of procedural due process, but here the existence of state remedies is relevant in a special sense. In procedural due process claims, the deprivation by state action of a constitution-

ally protected interest in "life, liberty, or property" is not in itself unconstitutional; *what is unconstitutional is the deprivation of such an interest without due process of law. . . .* The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; *it is not complete unless and until the State fails to provide due process.* Therefore, to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate. This inquiry would examine the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law.

*Zinermon v. Burch*, 494 U.S. 113, 125-26, 108 L. Ed. 2d 100, 114 (1990) (citations omitted) (emphasis added). Applying *Zinermon* to the case before us, we must determine if defendants provided due process to plaintiff, and if that due process was adequate for constitutional purposes. We determine that through its contested case hearing, defendants did provide adequate constitutional due process to plaintiff.

While plaintiff argues it was "deprived" of its permit when Howard sent the revocation letter, we look to the language of *Zinermon* and see that in the present case DWQ could not have completed an unconstitutional violation at the moment the revocation or "deprivation occurr[ed]." *Id.* Under *Zinermon*, DWQ could only have committed an unconstitutional deprivation if it failed to provide due process to plaintiff. In the case before us, Howard explained the remedies available to plaintiff in the revocation letter. Plaintiff followed the proper procedures in making its appeal, and eventually had its permit reinstated.

Furthermore, we note the record does not indicate that plaintiff petitioned the administrative law judge for a stay of the contested revocation pending the outcome of the contested case hearing. N.C. Gen. Stat. § 150B-33(6) (1999) provides that the administrative law judge may "[s]tay the contested action by the agency pending the outcome of the case, upon such terms as [the administrative law judge] deems proper, and subject to the provisions of G.S. 1A-1, Rule 65[.]" Any additional remedies to be afforded a party such as plaintiff should be addressed by the legislature.

Therefore, plaintiff was never unconstitutionally deprived of its permit as a result of DWQ failing to provide proper due process. In

fact, it was through due process provided by N.C. Gen. Stat. § 150B that plaintiff's permit was reinstated. We overrule this assignment of error.

Plaintiff next argues that in the interest of judicial economy, this Court should rule that defendants are not entitled to qualified immunity. However, as we have determined the trial court was correct in dismissing plaintiff's claim, we need not reach this issue. We dismiss this assignment of error.

We affirm the trial court's grant of summary judgment for defendants.

Affirmed.

Judges WALKER and CAMPBELL concur.