TIMOTHY ALLEN WARD AND DONNIE H. WARD, PLAINTIFFS V. NEW HANOVER COUNTY, DEFENDANT

No. COA05-423

(Filed 7 February 2006)

**Zoning— interpretation of special use permit—declaratory judgment action—exhaustion of administrative remedies**

Summary judgment for defendant county was affirmed where plaintiffs sought a declaratory judgment regarding the addition of a forklift to their marina for moving or storing boats without completing their administrative remedies for special use permits under the New Hanover County Zoning Ordinance.

Appeal by plaintiffs from order entered 20 October 2004 by Judge Ernest Fullwood in New Hanover County Superior Court. Heard in the Court of Appeals 6 December 2005.

*Shanklin & Nichols, LLP, by Kenneth A. Shanklin and Matthew A. Nichols, for plaintiffs-appellants.*

*E. Holt Moore, III, for defendant-appellee.*

LEWIS, Judge.

Timothy Allen Ward ("Timothy") and Donnie H. Ward ("Donnie") (collectively, "plaintiffs") appeal the trial court order granting summary judgment in favor of New Hanover County ("defendant"). For the reasons discussed herein, we affirm the trial court's order.

The facts and procedural history pertinent to the instant appeal are as follows: Plaintiffs are the owners of a commercial marina located in Wilmington, North Carolina. In 2002, plaintiffs requested the New Hanover County Planning Staff ("the Planning Staff") approve the use of a "forklift" on their property to move, store, launch, maintain, and repair boats. Plaintiffs contended the forklift's use was covered by a 1971 Special Use Permit ("the Permit") granted to their predecessor in title. According to plaintiffs, the Permit authorized the use of the property as a "[m]arina" and contained no express prohibition regarding the operation of a forklift on the property. In response, the Planning Staff contended the operation of a forklift on the property was prohibited and the site plan proposed by plaintiffs was inconsistent with the use allowed by the Permit.

After plaintiffs and the Planning Staff failed to reach an agreement regarding whether the forklift could be used under the terms of the Permit, plaintiffs requested the Planning Staff administratively modify the Permit to allow the use of the forklift on the property. However, on 31 October 2003, plaintiffs' counsel wrote the following letter to the Planning Staff:

> With respect to the request by [Timothy] for administrative modification of his special use permit with respect to the property . . . , *please consider this our formal withdrawal of the site plan to administratively modify the special use permit.* Thank you.

In April 2004, plaintiffs submitted a second site plan regarding the use of the marina. In a letter dated 7 May 2004, Senior Planner Baird Stewart ("Stewart") replied in pertinent part as follows:

> Please be advised that the New Hanover County Planning Staff and Zoning Enforcement Staff met to review your site plan for Carolina Marina & Yacht Club . . . . As noted previously any plans submitted for this project will be considered a revision to the original 1971 Special Use Permit. Per section 71-1(9) of the New Hanover County Zoning Ordinance "Minor changes shall be reviewed by the Planning Department and upon favorable recom-

mendation by the Planning Director may be approved by the Superintendent of Inspections. Such approval shall not be granted should the proposed revisions cause or contribute to: (A) A change in the character of the Development. . . ." Any proposed revisions that constitute[] something more than a minor change as determined by [the] Staff [] would have to go back through the Planning Board and County Commissioners Public Hearing Process. . . .

As indicated in previous correspondence [the Planning Staff] continues to believe that the boat ramp was originally intended to be the means to provide access to the water for boats that were being trailered by users of the facility, and that the use of a boat lift system or forklift was not envisioned for this particular marina. Therefore, [the Planning Staff] believes that the use of a boatlift or forklift or similar type equipment would be a change in the character of the development. You have indicated in previous correspondence and discussions that the use of a forklift is planned. This specific concern will need to be addressed by you with specific language noted on your plan, prior to any administrative revision being considered by [the] Staff.

Following receipt of this letter, plaintiffs' counsel wrote the County Attorney a letter dated 14 May 2004, stating in pertinent part as follows:

This letter follows our discussions yesterday and this morning regarding [Stewart's] May 7, 2004 letter to my client . . . . I appreciate you clarifying for me that Mr. Stewart's letter is simply part of the ongoing discussions that [Timothy] and this firm have had with [defendant] regarding the site plans for [Timothy's] marina property. Accordingly, you have confirmed that Mr. Stewart's letter is not a finding or determination by the County that requires, or even allows, [Timothy] to make a formal appeal to the Board of Adjustment or other Board . . . . It is my understanding that only the County Superintendent of Inspections can issue such a determination that is subject to appeal.

Please contact me if I am mistaken about the foregoing.

On 16 June 2004, plaintiffs filed a declaratory judgment complaint against defendant, alleging "judicial declaration is necessary and appropriate at this time under all of the circumstances" and requesting the trial court "decree[] that [plaintiffs] are entitled to use a fork-

lift [on the property] in connection with their operation of a commercial marina" and "issue a permanent injunction enjoining [defendant], its officers and agents from interfering with [plaintiffs'] lawful use of a forklift on [the property] under [the Permit]." On 15 July 2004, defendant filed an answer asserting, *inter alia*, that plaintiffs' complaint should be dismissed due to plaintiffs' failure to exhaust their administrative remedies. Following cross-motions for summary judgment, the trial court held a hearing on the matter on 6 October 2004. In an order entered 20 October 2004, the trial court concluded "[t]here are no material issues of fact between the parties as to whether [plaintiffs] have exhausted their administrative remedies with [defendant]," and the trial court granted summary judgment in defendant's favor. The trial court's order also dismissed as moot several motions related to the intervention of approximately thirty-three of plaintiffs' neighbors. However, the purported intervenors have neither sought appeal of this portion of the trial court order nor submitted briefs regarding the instant appeal. Plaintiffs appeal the entry of summary judgment.

---

The dispositive issue on appeal is whether the trial court erred by granting summary judgment in defendant's favor. Plaintiffs argue their declaratory complaint was properly filed and the trial court erred by concluding plaintiffs failed to exhaust their administrative remedies. We disagree.

"As a general rule, where the legislature has provided by statute an effective administrative remedy, that remedy is exclusive and its relief must be exhausted before recourse may be had to the courts." *Presnell v. Pell*, 298 N.C. 715, 721, 260 S.E.2d 611, 615 (1979) (citations omitted); *see also Justice for Animals, Inc. v. Robeson County*, 164 N.C. App. 366, 369, 595 S.E.2d 773, 775 (2004) ("If a plaintiff has failed to exhaust its administrative remedies, the court lacks subject matter jurisdiction and the action must be dismissed.") (citing *Shell Island Homeowners Ass'n v. Tomlinson*, 134 N.C. App. 217, 220, 517 S.E.2d 406, 410 (1999)).

This is especially true where a statute establishes . . . a procedure whereby matters of regulation and control are first addressed by commissions and agencies particularly qualified for the purpose. In such a case, the legislature has expressed an intention to give the administrative entity most concerned with a particular matter the first chance to discover and rectify error. Only after the appropriate agency has developed its own record and factual

background upon which its decision must rest should the courts be available to review the sufficiency of its process. An earlier intercession may be both wasteful and unwarranted. "To permit the interruption and cessation of proceedings before a commission by untimely and premature intervention by the courts would completely destroy the efficiency, effectiveness, and purpose of administrative agencies."

*Presnell*, 298 N.C. at 721-22, 260 S.E.2d at 615 (citations omitted).

Regarding municipal zoning classification and enforcement, N.C. Gen. Stat. § 153A-340(c) (2003) authorizes a county to create zoning ordinances or regulations which allow

a board of adjustment [to] determine and vary their application in harmony with their general purpose and intent and in accordance with general or specific rules therein contained. The regulations may also provide that the board of adjustment or the board of commissioners may issue special use permits or conditional use permits in the classes of cases or situations and in accordance with the principles, conditions, safeguards, and procedures specified therein and may impose reasonable and appropriate conditions and safeguards upon these permits. . . . When issuing or denying special use permits or conditional use permits, the board of commissioners shall follow the procedures for boards of adjustments . . ., and every such decision of the board of commissioners shall be subject to review by the superior court by proceedings in the nature of certiorari.

Our legislature recently amended N.C. Gen. Stat. § 153A-340, transferring portions of subsection (c) to (c1) and providing, *inter alia*, that "no change in permitted uses may be authorized by variance." Session Laws 2005-426, s.5(b). These amendments became effective 1 September 2005. *Id.*

Similar to N.C. Gen. Stat. § 153A-340, N.C. Gen. Stat. § 153A-345 (2003) provides in pertinent part as follows:

(a) A county may designate a planning agency to perform any or all of the duties of a board of adjustment in addition to its other duties.

(b) The board of adjustment shall hear and decide appeals from and review any order, requirement, decision, or determination made by an administrative official charged with enforc-

ing an ordinance adopted pursuant to this Part. Any person aggrieved . . . may take an appeal. . . .

(c) The zoning ordinance may provide that the board of adjustment may permit special exceptions to the zoning regulations in classes of cases or situations and in accordance with the principles, conditions, safeguards, and procedures specified in the ordinance. The ordinance may also authorize the board to interpret zoning maps and pass upon disputed questions of lot lines or district boundary lines and similar questions that may arise in the administration of the ordinance. . . .

. . . .

(e) Each decision of the board is subject to review by the superior court by proceedings in the nature of certiorari. . . .

N.C. Gen. Stat. § 153A-345 was also recently amended. The amendments, effective 1 January 2006, allow a county to designate "a planning board or the board of county commissioners" to perform any or all of the duties of a board of adjustment and, *inter alia,* further prohibit the use of a variance to authorize a "change in permitted uses." Session Laws 2005-418, s.8(b).

In this case, Article X of the New Hanover County Zoning Ordinance ("the Ordinance") provides as follows:

Duties of Building Inspector, Board of Adjustment, Courts and County Commissioners as to Matters of Appeal

108-1  It is the intention of this Ordinance that all questions arising in connection with the enforcement of this Ordinance shall be presented first to the Inspections Director or when so delegated to the Zoning Enforcement Officer and that such questions shall be presented to the Board of Zoning Adjustment only on appeal from the Inspections Director or Zoning Enforcement Officer; and that from the decision of the Board of Adjustment recourse shall be to the courts as provided by law.

Article VII of the Ordinance contains "Provisions For Uses Allowed As Special Uses" and authorizes "the Board of County Commissioners" to issue special use permits "after a public hearing and after Planning Board review and recommendation." Article VII, Section 71-1. Although Article VII requires that those applicants

issued special use permits comply with the specific conditions imposed by their permit as well as the general regulations of the Ordinance, Section 71-1(9) of Article VII allows "[t]he original applicants [issued a special use permit], their successors or their assignee [to] make minor changes in the [permitted special structure or use] provided the necessity for these changes is clearly demonstrated." Nevertheless, Section 71-1(9) also requires that such "[m]inor changes . . . be reviewed by the Planning Department," and it authorizes the "Superintendent of Inspections" to approve the changes only if the Planning Director issues a "favorable recommendation." Furthermore,

> Such approval shall not be granted should the proposed revisions cause or contribute to:
>
> (A)  A change in the character of the development[,]
>
> (B)  A change of design for, or an increase in the hazards to pedestrian and vehicle traffic circulation, or
>
> (C)  A reduction in the originally approved setbacks from roads and/or property lines.

*Id.*

As detailed above, neither the Planning Staff nor the Superintendent of Inspections have reached a formal decision regarding plaintiffs' use of their property. Plaintiffs admit they originally "consulted" with members of the Planning Staff to "determine if [the Planning Staff] would approve an administrative change to the site plan for the[ir] commercial marina." Nevertheless, citing their letter of 31 October 2003, plaintiffs contend they "officially withdrew their request and new site plan for administrative approval of the proposed expansion" and are thus presently seeking an "*interpretation* . . . of [their] existing rights" under the Permit rather than an expansion of their rights under the Permit. However, plaintiffs offer no explanation for either the "Tuesday 4/27/04" filing of the "site plan for Carolina Marina & Yacht Club" referred to in Stewart's 7 May 2004 letter or the "ongoing discussions . . . with [defendant] regarding the site plans" referred to in their own 14 May 2004 letter. Instead, plaintiffs assert our Supreme Court recognized "a declaratory judgment action []as a proper forum for a legal challenge to a zoning ordinance's requirement for a Church to pave its parking lot" in *Grace Baptist Church v. City of Oxford*, 320 N.C. 439, 358 S.E.2d 372 (1987), thereby authorizing the instant action. However, we note that in a footnote detail-

ing the prior history of *Grace Baptist*, the Court expressly stated that because neither of the parties raised the issue, it was not "decid[ing] the question of whether a party may seek an injunction against enforcement of an ordinance where it has failed to exhaust its administrative remedies." *Id.* at 440 n.1, 358 S.E.2d at 373 n.1. Accordingly, we are not persuaded *Grace Baptist* stands for the proposition advanced by plaintiffs.

Plaintiffs also assert our Supreme Court's decision in *Davidson County v. City of High Point,* 321 N.C. 252, 362 S.E.2d 553 (1987), "shows that . . . Superior Court is the proper venue for determining issues of *interpretation* of existing rights under special use permits." Plaintiffs are again mistaken.

In *Davidson County*, the City of High Point attained a special use permit from Davidson County which allowed High Point to upgrade a wastewater treatment facility located in an unincorporated portion of Davidson County, on the condition that any "sewer service to the citizens of Davidson County [was] subject to final approval by the Davidson County Board of Commissioners." *Id.* at 253, 362 S.E.2d at 555. The permit was issued in 1983, and it "directed the attention of those who were dissatisfied with the Board's decision on the permit to the right of appeal to Davidson County Superior Court within thirty days after the applicant's receipt of the permit." *Id.* at 254, 362 S.E.2d at 555. High Point subsequently sought to annex sixty acres in Davidson County and provide sewer service to residents through an outfall from the upgraded facility. On appeal from a judgment enjoining High Point from using the facility to provide sewer services to its citizens without prior approval from Davidson County, the Supreme Court "deal[t] with the jurisdictional conflict between the statutory power cities possess to provide services through public enterprises and the statutory power counties possess to regulate the use of land within their boundaries through zoning ordinances." *Id.* at 253, 362 S.E.2d at 554. After concluding Davidson County had no authority to restrict or regulate High Point's provision of sewer services to city residents, *id.* at 259, 362 S.E.2d at 558, the Court further rejected Davidson County's contention that High Point was precluded from challenging the condition of the special use permit, noting that

> [s]ince the City was unaware of the County's differing interpretation of [the condition regarding sewer provision], it could not have known that it should have appealed the issue . . . within thirty days of receiving the permit. . . . The County cannot now be

heard to assert that the City should have pursued administrative remedies for a problem it was unaware existed.

*Id.* at 260, 362 S.E.2d at 558.

We are not persuaded *Davidson County* authorizes plaintiffs' instant declaratory judgment action. In contrast to the facts of this case, the party seeking interpretation of the special use permit in *Davidson County* was unable to pursue and exhaust the administrative remedies afforded it because it was unaware of the need to challenge the permit while those remedies existed. Here, defendant placed no such time restrictions upon the special use permit issued to plaintiffs' predecessors in title. Instead, by the express terms of the Ordinance, a special use permit's applicant, successors, and assignees are each afforded an opportunity to pursue administrative remedies related to the expansion and interpretation of the permit, regardless of when the issues underlying the remedies arise. Further, as discussed above, plaintiffs have sought an administrative remedy in the instant case, petitioning the Planning Staff for administrative modification of the Permit and submitting site plans regarding the use of the marina at least twice. They did not complete those efforts.

In sum, plaintiffs have failed to demonstrate why they should be allowed to abandon their "ongoing discussions" with defendant and file a declaratory judgment action in the trial court, notwithstanding their admitted "[f]rustrat[ion] [with] these discussions" and alleged "simpl[e] attempt[] to obtain a speedy interpretation of [their] rights" under the Permit. Therefore, as plaintiffs have failed to first exhaust their administrative remedies by obtaining a formal determination from defendant regarding their proposed use of the marina and rights under the Permit, we affirm the trial court order granting summary judgment in favor of defendant.

Affirmed.

Judges WYNN and STEELMAN concur.