LAUREL VALLEY WATCH, INC., A NORTH CAROLINA NONPROFIT CORPORATION, PLAINTIFF V.
MOUNTAIN ENTERPRISES OF WOLF RIDGE, LLC, A NORTH CAROLINA LIMITED
LIABILITY COMPANY; HAW MOUNTAIN, INC., A NORTH CAROLINA BUSINESS
CORPORATION; RICHARD BUSSEY, A NORTH CAROLINA RESIDENT D/B/A SCENIC WOLF
LAUREL, LLC; WOLF RIDGES SKI AND REALTY, INC., A NORTH CAROLINA BUSINESS
CORPORATION; SCENIC WOLF DEVELOPMENT, LLC, A NORTH CAROLINA LIMITED
LIABILITY COMPANY; WOLF'S CROSSING, INC., A NORTH CAROLINA BUSINESS
CORPORATION; MADISON COUNTY, NORTH CAROLINA; AND MADISON COUNTY
BOARD OF COMMISSIONERS, DEFENDANTS

No. COA07-1336

(Filed 2 September 2008)

**1. Zoning— reclassification—confusion about new category—
no genuine issue of fact**

In a declaratory judgment action seeking to halt construction
of an airport, the trial court properly granted summary judgment
for the county and the board of commissioners where the case
began with a request for rezoning from residential to industrial,
which would allow the airport, and the minutes of the initial
meeting indicated that the rezoning was to residential-resort,
which would not allow the airport. The pleadings and affidavits
establish that there was no genuine issue as to the material fact
that the rezoning was to industrial.

**2. Estoppel— equitable—statute of limitations—notice of
new zoning category**

Equitable estoppel did not apply to prevent assertion of the
statute of limitations in a declaratory judgment action seeking to
halt construction of an airport. Plaintiff was not incorporated
until after the statute of limitations in the case had expired and
plaintiff's incorporators and members had notice that the county
had rezoned the 12 acres industrial to allow the development of
the airport.

**3. Zoning— subject matter jurisdiction—administrative remedies not exhausted**

    The trial court was without subject matter jurisdiction to rule on claims seeking declaratory and injunction relief against developers who allegedly violated a zoning ordinance in beginning construction of an airport. Plaintiff did not exhaust administrative remedies before filing the complaint.

    Appeal by Plaintiff from order entered 17 July 2006 by Judge C. Philip Ginn and from judgment entered 26 February 2007, corrected judgment entered 5 March 2007, and order entered 10 May 2007 by Judge James U. Downs in Madison County Superior Court. Heard in the Court of Appeals 2 April 2008.

    *Gary A. Davis & Associates, by Gary A. Davis, for Plaintiff-Appellant.*

    *Long, Parker, Warren & Jones, P.A., by Philip S. Anderson and Robert B. Long, Jr., and Leake & Scott, by Larry Leake, for Defendants-Appellees.*

STEPHENS, Judge.

    Laurel Creek runs through Laurel Valley in Madison County. Plaintiff Laurel Valley Watch, Inc., a nonprofit corporation formed by residents of Madison County on 6 January 2006, initiated this action on 9 March 2006 by filing a complaint in superior court seeking declaratory and injunctive relief on allegations that Defendants Mountain Enterprises of Wolf Ridge, LLC, Haw Mountain, Inc., and Richard Bussey ("Rick Bussey" or "Bussey") were violating Madison County's Land Use Ordinance ("Ordinance") by planning to construct an airport on a mountain ridge above Laurel Valley. Plaintiff subsequently amended its complaint, adding Defendants Wolf Ridges Ski and Realty, Inc., Scenic Wolf Development, LLC, and Wolf's Crossing, Inc. (together with Mountain Enterprises, Haw Mountain, and Bussey, "Developers") on the same allegations. Plaintiff also added Defendants Madison County and the Madison County Board of Commissioners in the amended complaint seeking declaratory relief on allegations that the Board of Commissioners improperly rezoned a tract of land on which the Developers were allegedly violating the Ordinance. The trial court resolved all of Plaintiff's claims in favor of Defendants. Plaintiff appeals.

## BACKGROUND

The Ordinance delineates three zoning districts pertinent to this appeal: (1) RA-26, Residential-Agricultural District, (2) R-26R, Residential-Resort District, and (3) I-D, Industrial District. On 28 June 2005, Ronnie Ledford, Orville English, and Rick Bussey submitted an application to the County to have 12 acres rezoned from R-26R to I-D.[1] Subsequently, the County's Planning Board issued a Notice of Public Hearing which stated that it would meet on 25 July 2005 to consider:

> 1. Application by Ronnie Ledford, Orville English and Rick Bussey to rezone approximately 12 acres located at the end of Haw Ridge Summit, off Wolf Ridge Drive, from residential-agriculture to industrial.

According to the Board's minutes from the 25 July 2005 meeting: (1) the first item the Board addressed was "Orville English, Rick Bussey—Rezone 12 acres [from] R-26R [sic] to I-D[,]" and (2) Ronnie Ledford told the Board that the rezoning was necessary in order to construct an airport which would accommodate "private jets and aircraft." Under the Ordinance, an airport is a permitted or conditional use only on land zoned I-D. The Planning Board unanimously voted to "[a]pprove rezoning from R-26R [sic] to I-D[.]"

On 26 July 2005, the Board of Commissioners issued a Notice of Public Hearing which stated that the Board would meet on 8 August 2005 to consider:

> 1. Application by Ronnie Ledford, Orville English and Rick Bussey to rezone approximately 12 acres located at the end of Haw Ridge Summit, off Wolf Ridge Drive, from residential-agriculture to industrial district.

The Board's minutes from the 8 August 2005 meeting state:

> [Item] II.
>
> Upon motion of Commissioner Moore, seconded by Commissioner Smathers, the Board voted unanimously to approve the application of Ronnie Ledford, Orville English and Rick Bussey to rezone 12 acres located at the end of Haw Ridge

---

1. Although the application sought to have the 12 acres rezoned from R-26R to I-D, it is clear from the record before us that the 12 acres was zoned RA-26 at the time the application was filed.

Summit, off Wolf Ridge Drive, from residential-agriculture to residential-resort district.[2]

On 9 March 2006, Plaintiff filed its initial complaint against Mountain Enterprises, Haw Mountain, and Bussey alleging that these Defendants were violating the Ordinance by planning to construct an airport on land zoned "Residential Resort" and that "[a]n airport is only a permitted use in an Industrial Zoning District[.]" Plaintiff sought declaratory relief that these Defendants were in violation of the Ordinance and preliminary and permanent injunctions to stop the airport's construction. On 13 March 2006, the Board of Commissioners met and passed the following resolution:

> WHEREAS, it has been called to the attention of the Board that a scrivener's error occurred with regard to the minutes of the August 8, 2005 meeting of this Board with regard to Item II with regard to the district to which the [a]ffected property was being rezoned; and

> WHEREAS, the Board has the authority to and should amend the minutes of the August 8, 2005 meeting to correct this scrivener's error;

> WHEREFORE, Item II of the minutes of the August 8, 2005 meeting of the Madison County Board of Commissioners is hereby amended to read as follows:

> [Item] II.

> Upon motion of Commissioner Moore, seconded by Commissioner Smathers, the Board voted unanimously to approve the application of Ronnie Ledford, Orville English and Rick Bussey to rezone 12 acres located at the end of Haw Ridge Summit, off Wolf Ridge Drive, from residential-agriculture to industrial district.

Plaintiff filed its amended complaint on 17 March 2006.

On 30 June 2006, Plaintiff filed a motion for summary judgment. In support of this motion, Plaintiff filed the affidavits of its president, Garland Galloway, and one of its members, Kim Garrett. In opposition to the motion, Defendants filed the affidavits of Bussey and Madison County's Zoning Enforcement Officer, Ryan Cody ("Cody"). In Cody's affidavit, he averred: (1) that he attended the Board of Com-

---

2. As discussed below, the statement that the Board voted to rezone the 12 acres "to residential-resort district[]" is a source of contention between the parties.

LAUREL VALLEY WATCH, INC. v. MOUNTAIN ENTERS. OF WOLF RIDGE, LLC

[192 N.C. App. 391 (2008)]

missioners' 8 August 2005 and 13 March 2006 meetings, and (2) that he was "familiar with Madison County's record regarding the Board of Commissioners' adoption of the amendment rezoning the 12 acres . . . to industrial."

In an order entered 17 July 2006, Judge C. Philip Ginn concluded:

1. There is a genuine issue of material fact whether the [Developers] are using approximately 15 acres of land, which surround the 12 acres rezoned Industrial, in a manner not permitted under current zoning regulations; and

2. Otherwise, there is no genuine issue of material fact relating to any of [] Plaintiff's claims, and the Defendants are entitled to judgment as a matter of law, pursuant to Rule 56(c) of the North Carolina Rules of Civil Procedure.

On the issue surviving summary judgment, Judge James U. Downs presided over a jury trial held during the 16 October 2006 session of Madison County Superior Court. At the conclusion of all the evidence, Judge Downs submitted, and the jury answered, the following issues:

1. Have the Defendants erected, moved, altered, constructed, reconstructed, or used any building or part thereof in the 15 acres surrounding and outside the 12 acres zoned Industrial?

ANSWER: No[;]

2. Have the Defendants used the 15 acres surrounding and outside the 12 acres zoned Industrial for grading, cut and fill, and erosion and sedimentation control activities and for open space?

ANSWER: Yes[;]

3. Have the Defendants used the 15 acres surrounding and outside the 12 acres zoned Industrial for any airstrip, taxiway, apron, or airport parking?

ANSWER: No[.]

In a judgment entered 26 February 2007, Judge Downs concluded that the Developers' use of the land surrounding the 12 acres was not in violation of the Ordinance and Judge Downs denied Plaintiff's claims for relief. The judgment taxed the costs of the action against Defendants. In a corrected judgment entered 5 March 2007, Judge Downs taxed the costs of the action against Plaintiff. Following the entry of judgment, Plaintiff filed a motion to set aside the verdict and

for a new trial on grounds of newly discovered evidence and erroneous jury instructions. Judge Downs denied this motion by order entered 10 May 2007. Plaintiff timely appealed.

## CLAIM AGAINST MADISON COUNTY

In its sole claim against Madison County and the Board of Commissioners, Plaintiff sought a declaratory judgment that the Board of Commissioners improperly rezoned the 12 acres. On appeal, Plaintiff argues that the trial court erred in entering summary judgment in favor of the County on this claim. We disagree.

A suit to determine the validity of a zoning ordinance is a proper case for a declaratory judgment. N.C. Gen. Stat. § 1-254 (2005); *Blades v. City of Raleigh*, 280 N.C. 531, 187 S.E.2d 35 (1972); *Woodard v. Carteret Cty.*, 270 N.C. 55, 153 S.E.2d 809 (1967). In such an action, summary judgment is properly granted "where 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.' " *Williams v. Blue Cross Blue Shield of N.C.*, 357 N.C. 170, 178, 581 S.E.2d 415, 422 (2003) (quoting N.C. Gen. Stat. § 1A-1, Rule 56(c) (2003)). Our Supreme Court has stated that " 'an issue is genuine if it is supported by substantial evidence,' *DeWitt* [*v. Eveready Battery Co.*], 355 N.C. [672,] 681, 565 S.E.2d [140,] 146 [(2002)], which is that amount of relevant evidence necessary to persuade a reasonable mind to accept a conclusion[.]" *Liberty Mut. Ins. Co. v. Pennington*, 356 N.C. 571, 579, 573 S.E.2d 118, 124 (2002). Further, "[a]n issue is material if the facts alleged would constitute a legal defense, or would affect the result of the action, or if its resolution would prevent the party against whom it is resolved from prevailing in the action." *Koontz v. City of Winston-Salem*, 280 N.C. 513, 518, 186 S.E.2d 897, 901 (1972).

"For the purpose of promoting health, safety, morals, or the general welfare, a county may adopt zoning and development regulation ordinances." N.C. Gen. Stat. § 153A-340(a) (2005). "A cause of action as to the validity of any zoning ordinance, or amendment thereto, [so adopted] shall accrue upon adoption of the ordinance, or amendment thereto, and shall be brought within two months as provided in G.S. 1-54.1." N.C. Gen. Stat. § 153A-348 (2005).

[1] In this case, the pleadings and affidavits establish that there is no genuine issue as to the material fact that the County rezoned the

12 acres to the zoning classification I-D on 8 August 2005. The evidence establishing this fact includes: (1) the rezoning application which states that the Developers sought to have the 12 acres rezoned I-D, (2) the Planning Board's notice of public hearing which states that the Planning Board would meet to consider the request to have the 12 acres rezoned I-D, (3) the Planning Board's minutes which state that the Planning Board voted unanimously to approve the request to rezone the 12 acres I-D, (4) the Board of Commissioners' notice of public hearing which states that the Board would meet to consider the request to rezone the 12 acres I-D, (5) that portion of the Board of Commissioners' minutes which states that the Board "voted unanimously to *approve* the application" (emphasis added), (6) a newspaper article published after the Board of Commissioners' 8 August 2005 meeting which states that the Board voted to rezone the 12 acres "to industrial district[,]" (7) the Board's resolution amending the minutes of the 8 August 2005 meeting which states that the minutes contained a scrivener's error and that the Board voted unanimously at the 8 August 2005 meeting to rezone the 12 acres I-D, (8) Cody's affidavit which states that he was "familiar with Madison County's record regarding the Board of Commissioners' adoption of the amendment rezoning the 12 acres . . . to industrial[,]" and (9) Bussey's affidavit which states that he attended the 8 August 2005 meeting and that the Board voted to rezone the 12 acres I-D at that meeting. The only evidence which tends to raise an issue as to this fact is that portion of the Board's 8 August 2005 minutes which states that the Board voted to rezone the 12 acres "from residential-agriculture to residential-resort district." However, this portion of the minutes is clearly opposed to the portion of the minutes which states that the Board voted to "approve" the application, as the application did not seek to have the 12 acres rezoned R-26R. This contradiction is addressed and resolved by the Board of Commissioners' 13 March 2006 resolution which states that the contradiction was the result of a "scrivener's error[.]" Furthermore, Plaintiff did not allege in its amended complaint that the County did not, in fact, rezone the 12 acres I-D at the 8 August 2005 meeting, nor did Garland Galloway or Kim Garrett in their affidavits. Thus, there is no genuine issue as to the fact that the County rezoned the 12 acres I-D at its 8 August 2005 meeting. This fact is material because the statute of limitations had expired by the time Plaintiff filed its complaint. Thus, the trial court properly granted summary judgment in favor of the County and the Board of Commissioners.

[2] In the alternative, however, Plaintiff argues that even if the County properly rezoned the 12 acres at the 8 August 2005 meeting, Defendants are equitably estopped from asserting the statute of limitations because of the error in the minutes of the meeting. The doctrine of equitable estoppel applies

> "when any one, by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts exist, and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts."

*Whitacre P'ship v. Biosignia, Inc.*, 358 N.C. 1, 17, 591 S.E.2d 870, 881 (2004) (citation omitted). We conclude that the doctrine does not apply in this case.

We begin by noting that Plaintiff was not incorporated until 6 January 2006, almost three months after the statute of limitations had expired. Thus, Plaintiff's assertion in its brief that it "could not have challenged the industrial rezoning within the sixty-day limitations period after the 8 August 2005 meeting, because it reasonably relied upon the minutes" is not entirely accurate. Plaintiff could not have challenged the rezoning decision within the limitations period because Plaintiff was not incorporated until after the limitations period expired.

More importantly, however, there is no evidence in the record that suggests that Plaintiff, or any one of Plaintiff's incorporators or members, read and relied upon the minutes before the statute of limitations expired. To the contrary, the evidence tends to show that Garland Galloway, Plaintiff's president, first saw the minutes in December 2005, by which time the statute had run. Moreover, both the Planning Board and the Board of Commissioners issued notices of hearing which appeared in the local newspaper and which stated that the County was considering an application to rezone the 12 acres I-D.[3] The local newspaper also published an article on 24 August 2005 which stated that the Board of Commissioners

_____

3. Plaintiff's argument that the notices of hearing did not sufficiently describe the property to be rezoned is unavailing. The notices were "reasonably calculated under all circumstances to apprise interested parties of the pendency of the action or proceeding and afford them an opportunity to present their objections." *Frizzelle v. Harnett Cty.*, 106 N.C. App. 234, 239, 416 S.E.2d 421, 423 (citations omitted), *disc. review denied*, 332 N.C. 147, 419 S.E.2d 571 (1992).

okayed the application . . . to rezone approximately 12 acres located at the end of Haw Ridge Summit, off Wolf Laurel Drive, from residential-agriculture to industrial district.

The property will be the site of a proposed jet airport on Wolf Ridge. The project has been okayed by the FAA.

In sum, Plaintiff's incorporators and members had notice that the County had rezoned the 12 acres to I-D to allow for the development of the airport. Because the evidence is insufficient to support a determination that Plaintiff reasonably relied on the 8 August 2005 minutes in filing its lawsuit after the expiration of the statute of limitations, the doctrine of equitable estoppel does not apply to this case.

## CLAIMS AGAINST THE DEVELOPERS

[3] In its claims against the Developers in the amended complaint, Plaintiff sought declaratory and injunctive relief on allegations that the Developers had begun construction of the airport on the 12 acres and its environs and were, thus, violating the Ordinace. Having carefully reviewed North Carolina's General Statutes and prior decisions of both our Supreme Court and this Court, we conclude that Plaintiff did not exhaust its administrative remedies before filing its complaint and that the trial court, therefore, was without subject matter jurisdiction to rule on these claims.

The enactment and enforcement of county zoning ordinances are exercises of the State's police powers—powers which have been delegated to the counties by our General Assembly. N.C. Gen. Stat. ch. 153A (2005); *Baucom's Nursery Co. v. Mecklenburg Cty.*, 89 N.C. App. 542, 366 S.E.2d 558, *disc. review denied*, 322 N.C. 834, 371 S.E.2d 274 (1988). Typically, counties which have enacted zoning ordinances pursuant to this grant of power designate zoning officials to enforce the ordinances. As discussed above, for example, Madison County appointed Cody as the County's Zoning Enforcement Officer. In the event that a county official refuses to investigate or enforce a county's ordinance, an action will lie in mandamus to compel the official to investigate and enforce the ordinance. *Midgette v. Pate*, 94 N.C. App. 498, 380 S.E.2d 572 (1989).

Any decision made by a county official charged with enforcing a county's ordinance may be appealed by following a specific procedure set forth in Chapter 153A:

(b) A zoning ordinance or those provisions of a unified development ordinance adopted pursuant to the authority

granted in this Part shall provide that the board of adjustment shall hear and decide appeals from and review any order, requirement, decision, or determination made by an administrative official charged with the enforcement of that ordinance.

. . . .

(e) The board of adjustment, by a vote of four-fifths of its members, may reverse any order, requirement, decision, or determination of an administrative officer charged with enforcing an ordinance adopted pursuant to this Part, or may decide in favor of the applicant a matter upon which the board is required to pass under the ordinance, or may grant a variance from the provisions of the ordinance.

. . . .

(e2) Each decision of the board is subject to review by the superior court by proceedings in the nature of certiorari.

N.C. Gen. Stat. § 153A-345 (2005). *See, e.g., Riggs v. Zoning Bd. of Adjust. of Carteret Cty.,* 101 N.C. App. 422, 399 S.E.2d 149 (1991) (reversing superior court's order affirming board of adjustment's approval of zoning enforcement official's decision). "It is not the function of the reviewing court, in [a proceeding in the nature of certiorari], to find the facts but to determine whether the findings of fact made by the Board are supported by the evidence before the Board." *Capricorn Equity Corp. v. Town of Chapel Hill Bd. of Adjust.,* 334 N.C. 132, 136, 431 S.E.2d 183, 186 (1993) (quotation marks and citations omitted). "The superior court is not the trier of fact but rather sits as an appellate court and may review both (i) sufficiency of the evidence presented to the municipal board and (ii) whether the record reveals error of law." *Id.* (citations omitted).

The Ordinance at issue in the case at bar tracks the procedures set forth in Chapter 153A. Section 100 of the Ordinance provides that "[i]f a ruling of the Zoning Enforcement Officer is questioned, the aggrieved party or parties may appeal such ruling to the Board of Adjustment." Section 105 provides:

In case any building is erected, constructed, reconstructed, altered, repaired, converted or maintained, or any building or land is used in violation of this ordinance, the Zoning Enforcement Officer or any other appropriate county authority, or any person who would be damaged by such violation, in addition to other

remedies, may institute an action for injunction or mandamus, or other appropriate action or proceeding to prevent such violation.

Section 114, entitled "Duties of the Zoning Enforcement Officer, Board of Adjustment, Courts and County Commissioners on Matters of Appeal[,]" provides, in part:

It is the intention of this ordinance that all questions arising in connection with the enforcement of this ordinance shall be presented to the Board of Adjustment only on appeal from the Zoning Enforcement Officer and that from the decision of the Board of Adjustment recourse shall be had to courts as provided by law.

The record before us, however, does not contain any evidence that Plaintiff ever asked Madison County to investigate the Developers' alleged zoning violations. Instead, Plaintiff filed its complaint directly in superior court. We find no authority in our General Statutes, our case law, or in the Ordinance which supports the proposition that such an action is properly brought in superior court in the first instance.[4] In fact, recent decisions of this Court support the proposition that a plaintiff must first seek relief from the county before seeking relief in the courts.

In *Darbo v. Old Keller Farm Prop. Owners' Ass'n*, 174 N.C. App. 591, 621 S.E.2d 281 (2005), plaintiffs submitted a plat to the Watauga County Planning and Inspection Department proposing to subdivide one lot into five new lots. Plaintiffs proposed to service the five new lots by a forty-five-foot right-of-way. Upon learning of the proposed subdivision, defendants "notified the Planning Department that it disputed whether plaintiffs had a sufficient right-of-way to allow the subdivision as proposed[.]" *Id.* at 592, 621 S.E.2d at 282. The planning department refused to consider plaintiffs' subdivision plans and "notified plaintiffs that 'when there has been a dispute regarding right-of-way, . . . the Planning Board has taken the position that the parties resolve the dispute themselves, rather than ask the County to

---

4. In *Sedman v. Rijdes*, 127 N.C. App. 700, 492 S.E.2d 620 (1997), plaintiff filed a complaint on allegations that defendant, plaintiff's neighbor, was using land so as to constitute a nuisance and in violation of the Orange County Zoning Ordinance. The trial court granted summary judgment in favor of defendant "on the issue of the alleged violation of the Orange County Zoning Ordinance[,]" *id.* at 702, 492 S.E.2d at 621 (quotation marks omitted), and plaintiff appealed. On appeal, this Court held that defendant's use of the land was exempt from compliance with the ordinance and this Court affirmed the trial court. This Court did not address the issue of subject matter jurisdiction.

do so, as these are actually private legal issues over which the courts, not the County, have jurisdiction.' " *Id.* Plaintiffs thereafter filed an action in superior court seeking a declaratory judgment concerning the right-of-way. After reviewing, *inter alia,* the Watauga County Ordinance to Govern Subdivisions and Multi Unit Structures, the trial court granted judgment in favor of plaintiffs.

On appeal, this Court reached the merits of the appeal and affirmed the trial court's judgment. It appears from our decision that the parties did not raise the issue of subject matter jurisdiction on appeal. Perhaps in light of the planning board's refusal to rule on plaintiff's proposed plat and directive to resolve the dispute in the courts, this Court did not raise the issue *sua sponte* before address-ing the merits. However, we began our analysis by stating that "the issues presented in this case are issues that are properly addressed to and resolved by county or municipal planning and inspections depart-ments as an initial matter, rather than our courts." *Id.* at 593, 621 S.E.2d at 283.

In *Ward v. New Hanover Cty.*, 175 N.C. App. 671, 625 S.E.2d 598, *disc. review denied,* 360 N.C. 582, 636 S.E.2d 200 (2006), plaintiffs owned a marina that was subject to a special use permit granted by New Hanover County in 1971. In 2002, plaintiffs asked the county's planning staff to approve the use of a forklift on the marina. Plaintiffs contended that such a use was "covered" by the permit, the planning staff disagreed, and plaintiffs and the County attempted to resolve the dispute. *Id.* at 672, 625 S.E.2d at 599. Before either the planning staff or the County's Superintendent of Inspections reached a formal deci-sion on plaintiffs' request, plaintiffs filed a complaint for declaratory judgment in superior court alleging that "judicial declaration is nec-essary and appropriate at this time under all of the circumstances[.]" *Id.* at 673, 625 S.E.2d at 600 (quotation marks omitted). Plaintiffs sought: (1) a "decree[] that [plaintiffs] are entitled to use a forklift [on the property] in connection with their operation of a commercial marina[,]" and (2) "a permanent injunction enjoining [defendant], its officers and agents from interfering with [plaintiffs'] lawful use of a forklift on [the property] under [the Permit]." *Id.* at 673-74, 625 S.E.2d at 600 (quotation marks omitted). The trial court concluded that there were no material issues of fact between the parties as to whether plaintiffs exhausted their administrative remedies with the county, and the trial court granted summary judgment in the county's favor. Plaintiffs appealed.

On appeal, this Court stated:

"As a general rule, where the legislature has provided by statute an effective administrative remedy, that remedy is exclusive and its relief must be exhausted before recourse may be had to the courts." *Presnell v. Pell,* 298 N.C. 715, 721, 260 S.E.2d 611, 615 (1979) (citations omitted); *see also Justice for Animals, Inc. v. Robeson County,* 164 N.C. App. 366, 369, 595 S.E.2d 773, 775 (2004) ("If a plaintiff has failed to exhaust its administrative remedies, the court lacks subject matter jurisdiction and the action must be dismissed.") (citing *Shell Island Homeowners Ass'n v. Tomlinson,* 134 N.C. App. 217, 220, 517 S.E.2d 406, 410 (1999)).

*Id.* at 674, 625 S.E.2d at 601. Quoting *Presnell,* 298 N.C. at 721-22, 260 S.E.2d at 615 (citations omitted), the Court then stated:

This is especially true where a statute establishes . . . a procedure whereby matters of regulation and control are first addressed by commissions and agencies particularly qualified for the purpose. In such a case, the legislature has expressed an intention to give the administrative entity most concerned with a particular matter the first chance to discover and rectify error. Only after the appropriate agency has developed its own record and factual background upon which its decision must rest should the courts be available to review the sufficiency of its process. An earlier intercession may be both wasteful and unwarranted. "To permit the interruption and cessation of proceedings before a commission by untimely and premature intervention by the courts would completely destroy the efficiency, effectiveness, and purpose of administrative agencies."

*Id.* at 674-75, 625 S.E.2d at 601. We concluded that plaintiffs "failed to first exhaust their administrative remedies by obtaining a formal determination from defendant regarding their proposed use of the marina and rights under the [p]ermit," and we affirmed the trial court's order granting summary judgment in favor of defendant. *Id.* at 679, 625 S.E.2d at 603.

As in *Ward,* Plaintiff in this case did not exhaust its administrative remedies before seeking relief in the courts. Plaintiff could have: (1) sought and received a ruling from Madison County's zoning officials, (2) appealed an adverse ruling of the officials to the Planning Board, and (3) appealed an adverse ruling of the Planning Board to

the superior court. N.C. Gen. Stat. § 153A-345. Instead, Plaintiff filed its case directly to the superior court. By taking such action, Plaintiff bypassed the statutorily prescribed procedures for resolving zoning disputes. *Id.* The General Assembly did not signify an intent in Chapter 153 to give private citizens the right to initiate an action in superior court to enforce zoning ordinances. Plaintiff having failed to exhaust its administrative remedies, we conclude that the trial court was without subject matter jurisdiction to rule on Plaintiff's claims concerning the Developers.

In reaching this conclusion, we are cognizant of the efforts expended by the parties to resolve Plaintiff's claims on the merits. We recognize that neither this Court, where the parties appeared to present oral arguments, nor the trial court, where Judge Downs conducted a jury trial on Plaintiff's claims, addressed the issue of subject matter jurisdiction. Indeed, we acknowledge that we raise this issue *sua sponte.* However, it is well-established that an issue of subject matter jurisdiction may be raised at any stage of a case and may be raised by a court on its own motion. Furthermore, " '[a] universal principle as old as the law is that the proceedings of a court without jurisdiction of the subject matter are a nullity.' " *In re T.R.P.*, 360 N.C. 588, 590, 636 S.E.2d 787, 790 (2006) (quoting *Burgess v. Gibbs*, 262 N.C. 462, 465, 137 S.E.2d 806, 808 (1964)).

To the extent that the trial court, in its 17 July 2006 order, granted summary judgment in favor of the County and the Board of Commissioners on Plaintiff's claim that the County improperly rezoned the 12 acres, the trial court's order is affirmed. To the extent that the trial court granted summary judgment in favor of the Developers on Plaintiff's claim that the Developers were violating the Ordinance on the 12 acres, the trial court's 17 July 2006 order is vacated. The judgment and corrected judgment are vacated.

AFFIRMED IN PART; VACATED IN PART.

Judges McGEE and TYSON concur.