CARY CREEK LIMITED PARTNERSHIP, PLAINTIFF v. TOWN OF CARY,
NORTH CAROLINA, DEFENDANT

No. COA09-799

(Filed 16 March 2010)

## 1. Declaratory Judgments— subject matter jurisdiction— ongoing certiorari proceeding

The superior court had subject matter jurisdiction over plaintiff's declaratory judgment claim concerning the validity of a riparian buffer ordinance and claiming inverse condemnation. The fact that plaintiff's *certiorari* proceeding was on-going did not deprive the superior court of subject matter jurisdiction.

## 2. Jurisdiction— subject matter jurisdiction—controversy not ripe—inverse condemnation

The superior court lacked subject matter jurisdiction over plaintiff's action seeking compensation under a theory of inverse condemnation. Neither of the prerequisite events had occurred at the time plaintiff filed its claim, there had been no taking, and there was no concrete controversy ripe for adjudication.

## 3. Zoning— riparian buffer ordinance—inverse condemnation

The superior court did not err by granting summary judgment in favor of defendant on plaintiff's declaratory judgment claim concerning the validity of a riparian buffer ordinance and claiming inverse condemnation, and by concluding that the local laws challenged in this action were not in conflict with or preempted by general State law.

Judge JACKSON concurring in a separate opinion.

Appeal by plaintiff from orders entered 14 January 2009 and cross-appeal by defendant from order entered 14 November 2008 by Judge James C. Spencer, Jr., in Wake County Superior Court. Heard in the Court of Appeals 18 November 2009.

*Robertson, Medlin & Blocker, P.L.L.C., by John F. Bloss, and Smith Moore Leatherwood, L.L.P., by Marc C. Tucker, for plaintiff-appellant.*

*Womble Carlyle Sandridge & Rice, P.L.L.C., by John C. Cooke and Michael T. Henry, for defendant-appellee.*

*Julia F. Youngman for Catawba Riverkeeper Foundation, Inc., Haw River Assembly, North Carolina Conservation Network, Southern Environmental Law Center and WakeUP Wake County, amici curiae.*

*Gregory F. Schwitzgebel, III, for North Carolina League of Municipalities and North Carolina Association of County Commissioners, amici curiae.*

BRYANT, Judge.

On 29 May 2007, plaintiff Cary Creek Limited Partnership ("Cary Creek") sought a declaratory judgment that ordinances enacted by defendant Town of Cary ("the Town") which require preservation of riparian buffers are invalid and unenforceable or, in the alternative, that the Town must compensate Cary Creek under principles of inverse condemnation. The Town moved to dismiss pursuant to Rules 12(b)(1) and 12(b)(6), which motion the trial court subsequently denied by order entered 14 November 2008. On 27 October 2008, Cary Creek moved for partial summary judgment, and on 26 November 2008, the Town moved for summary judgment as well. On 14 January 2009, following a hearing, the trial court entered orders granting summary judgment in favor of the Town and denying summary judgment to Cary Creek on both the declaratory judgment and inverse condemnation claims. Cary Creek appeals. As discussed below, we affirm in part, reverse in part, and vacate in part.

*Facts*

Cary Creek owns a tract of approximately 108 acres ("the site") near the intersection of Highway 55 and Alston Avenue in the Town of Cary which it plans to develop as a mixed commercial and residential center. The site is within the Cape Fear River Basin and is traversed by both a perennial stream and two intermittent streams which flow only during wet periods.

The Town has enacted a series of ordinances known collectively as the Land Development Ordinance which includes a subchapter of stormwater management ordinances. These stormwater management

ordinances were designed for the "protection of riparian buffers, control of nitrogen export from development, control of peak stormwater runoff, and the use of best management practices." Stormwater management ordinance section 7.3.2, entitled "Protecting Riparian Buffers," required one-hundred-foot riparian buffers on either side of "[a]ll perennial and intermittent streams" indicated on USGS maps and fifty-foot buffers adjacent to other surface waters indicated by the Soil Survey of Wake or Chatham County.[1] Stormwater management ordinance section 7.3.7 permits parties to seek a variance from the riparian buffer requirement from the Cary Town Council ("the Council"). The Council denied Cary Creek's request for such a variance on 26 April 2007.

Cary Creek raises two arguments on appeal, contending the trial court erred in granting summary judgment to the Town on Cary Creek's (I) declaratory judgment and (II) inverse condemnation claims. The Town cross-appeals on two issues, arguing that the trial court erred in its 14 November 2008 order denying the Town's motion to dismiss Cary Creek's (III) declaratory judgment and (IV) inverse condemnation claims for lack of subject matter jurisdiction. Because the Town's cross-appeal implicates the threshold issue of subject matter jurisdiction, we address those arguments first. We affirm both the trial court's denial of the Town's motion to dismiss and its grant of summary judgment to the Town on Cary Creek's declaratory judgment action. We reverse the trial court's denial of the Town's motion to dismiss the inverse condemnation claim and vacate the grant of summary judgment to the Town on this claim.

*III*

[1] The Town first contends that the superior court lacked subject matter jurisdiction over Cary Creek's declaratory judgment claim. As discussed below, we disagree.

"A suit to determine the validity of a zoning ordinance is a proper case for a declaratory judgment." *Laurel Valley Watch, Inc. v. Mt. Enters. of Wolf Ridge, LLC,* —— N.C. App. ——, ——, 665 S.E.2d 561, 565 (2008) (citations omitted). In a pair of unpublished opinions, we have previously approved a plaintiff challenging the validity of the Town's riparian buffer ordinance and claiming inverse condemnation via a declaratory judgment action while also pursuing a separate cer-

---

1. The Town has since revised its ordinances, but the parties have stipulated that Cary Creek's development is subject to the previous ordinance scheme as discussed herein.

tiorari proceeding to challenge the Town's denial of his request for a variance under the ordinance. *See ARH Int'l Co. v. Cary*, 170 N.C. App. 436, 613 S.E.2d 753 (2005) (unpublished); *Hashemi v. Town of Cary*, 173 N.C. App. 447, 618 S.E.2d 875 (2005) (unpublished). Indeed, because the standard of review and role of the superior court is different in certiorari proceedings, where it sits as an appellate court, than in declaratory judgment actions, where it sits as a trial court, such actions *must* be brought separately. *See Batch v. Town of Chapel Hill*, 326 N.C. 1, 11, 387 S.E.2d 655, 661-62, *cert. denied*, 496 U.S. 931, 110 L. Ed. 2d 651 (1990). The fact that Cary Creek's certiorari proceeding is on-going does not deprive the superior court of subject matter jurisdiction in this declaratory judgment action. The Town's cross-assignment of error on this point is overruled.

## IV, II

**[2]** The Town also argues that the superior court lacked subject matter jurisdiction over Cary Creek's action seeking compensation under a theory of inverse condemnation because the matter is unripe. We agree.

Cary Creek's inverse condemnation claim is based on the theory that *if* the riparian buffer ordinance is upheld as valid and enforceable in the instant case and *if* Cary Creek does not prevail in its certiorari proceeding, a taking will have occurred. Because neither of these prerequisite events had occurred at the time Cary Creek filed its claim, there had been no taking and there was no concrete controversy ripe for adjudication. *See Messer v. Town of Chapel Hill*, 125 N.C. App. 57, 61, 479 S.E.2d 221, 223, *vacated as moot*, 346 N.C. 259, 485 S.E.2d 269 (1997) (stating that "land-use challenges are not ripe for review until there has been a final decision about what uses of the property will be permitted"). We reverse the trial court's order denying the Town's motion to dismiss as to this claim. Further, because Cary Creek's inverse condemnation claim was not ripe and should have been dismissed, we also vacate the trial court's grant of summary judgment to the Town on this claim.

## I

**[3]** Cary Creek argues that the Court erred in granting summary judgment to the Town on Cary Creek's declaratory judgment claim. We disagree.

In a declaratory judgment action to determine the validity of a zoning ordinance, "summary judgment is properly granted where the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." *Laurel Valley Watch, Inc.,* —— N.C. App. at ——, 665 S.E.2d at 565 (internal quotation marks and citations omitted). "[A]n appellate court reviews the trial court's decision *de novo*, with the evidence to be viewed in the light most favorable to the nonmovant." *Granville Farms, Inc. v. County of Granville,* 170 N.C. App. 109, 111, 612 S.E.2d 156, 158 (2005).

Cary Creek moved for partial summary judgment on its declaratory judgment claim, arguing that the State's regulation of riparian buffers preempted any attempt by the Town to implement more stringent regulations. The trial court did not explain the basis for its grant of summary judgment as to Cary Creek's declaratory judgment and inverse condemnation claims in the order entered 14 January 2009 titled "Summary Judgment in Favor of the Town on Counts I and II". However, in its order granting partial summary judgment in favor of the Town in response to Cary Creek's motion, also entered 14 January 2009, the trial court states that "the local laws challenged in this action are not in conflict with or preempted by general State law".

In *Granville Farms, Inc.,* we also considered whether an "ordinance was preempted because it purports to regulate a field for which a state or federal statute clearly shows a legislative intent to provide a complete and integrated regulatory scheme to the exclusion of local regulation." *Id.* That case concerned the land application of biosolids and we noted that the relevant "statute, coupled with the permit requirements set forth in the applicable regulations, are so comprehensive in scope that they were intended to comprise a 'complete and integrated regulatory scheme' on a statewide basis, thus leaving no room for further local regulation." *Id.* at 116, 612 S.E.2d at 161.

In contrast, the State's watershed management system both provides minimal protections which local governments must enforce, and explicitly permits local ordinances which are more protective than those minimal state-wide standards. North Carolina General Statute section 143-214.5, titled "Water supply watershed protection", contains a policy statement which provides, in pertinent part:

This section provides for a *cooperative program of water supply watershed management and protection to be administered by local governments consistent with minimum statewide man-*

*agement requirements* established by the [Environmental Management] Commission. If a local government fails to adopt a water supply watershed protection program or does not adequately carry out its responsibility to enforce the minimum water supply watershed management requirements of its approved program, the Commission shall administer and enforce the minimum statewide requirements.

N.C. Gen. Stat. § 143-214.5(a) (2007) (emphasis added). This statute further specifies that local governments, such as the Town, may implement more restrictive local ordinances:

(d) Mandatory Local Programs.—The Department shall assist local governments to develop water supply watershed protection programs that comply with this section. Local government compliance programs shall include an implementing local ordinance and shall provide for maintenance, inspection, and enforcement procedures. As part of its assistance to local governments, the Commission shall approve and make available a model local water supply watershed management and protection ordinance. The model management and protection ordinance adopted by the Commission shall, at a minimum, include as options (i) controlling development density, (ii) providing for performance-based alternatives to development density controls that are based on sound engineering principles, and (iii) a combination of both (i) and (ii). Local governments shall administer and enforce the minimum management requirements. Every local government that has within its jurisdiction all or a portion of a water supply watershed shall submit a local water supply watershed management and protection ordinance to the Commission for approval. *Local governments may adopt such ordinances pursuant to their general police power, power to regulate the subdivision of land, zoning power, or any combination of such powers. In adopting a local ordinance that imposes water supply watershed management requirements that are more stringent than those adopted by the Commission, a county must comply with the notice provisions of G.S. 153A-343 and a municipality must comply with the notice provisions of G.S. 160A-384. This section shall not be construed to affect the validity of any local ordinance adopted for the protection of water supply watersheds prior to completion of the review of the ordinance by the Commission or prior to the assumption by the Commission of responsibility for a local water supply watershed protection*

*program.* Local governments may create or designate agencies to administer and enforce such programs. The Commission shall approve a local program only if it determines that the requirements of the program equal or exceed the minimum statewide water supply watershed management requirements adopted pursuant to this section.

N.C.G.S. § 143-214.5(d). Thus, the relevant statute specifically contemplates that local governments, such as the Town, will enact their own watershed protection ordinances and may enact more stringent provisions than the minimum requirements established by the Environmental Management Commission ("EMC"). Further, despite contentions by Cary Creek that the Town had not received approval from the EMC for its riparian buffer ordinances, N.C.G.S. § 143-214.5(d) specifies that its approval requirements "shall not be construed to affect the validity of any local ordinance adopted for the protection of water supply watersheds prior to completion of the review of the ordinance by the Commission." *Id.*

In addition, in 2000, the Town sought an interbasin transfer certificate ("IBT") to permit it to discharge drinking water obtained from Jordan Lake into the Neuse River Basin. The EMC issued an IBT to the Town in 2001, which required the Town to adopt ordinances creating riparian buffers "similar to or more protective than the Neuse River buffer rule." This IBT mandate, along with the language of N.C.G.S. §§ 143-214.5 and 143-214.23(a), indicates that watershed protection is not a "field for which a state or federal statute clearly shows a legislative intent to provide a complete and integrated regulatory scheme to the exclusion of local regulation." *Granville Farms, Inc.,* 170 N.C. App. at 111, 612 S.E.2d at 158. Rather, the statutes anticipate that local governments will enact ordinances more restrictive than those minimal standards established by our statutes. Thus, the trial court did not err in granting summary judgment to the Town and concluding that "the local laws challenged in this action are not in conflict with or preempted by general State law."

Cary Creek's brief relies largely on our unpublished opinion in *Hashemi, supra.* However, Cary Creek fails to note that *Hashemi* was unpublished in its brief to this Court and did not serve this Court with a copy of the opinion as required. N.C.R. App. P. 30(e)(3). Where a party cites an unpublished opinion but fails to comply with the requirement that it "serve[] a copy thereof on all other parties in the case and on the court," we may decline to consider the unpublished case. *State ex rel. Utils. Comm'n v. Town of Kill Devil Hills,* —— N.C.

App. ——, —— n.1, 670 S.E.2d 341, 346 n.1 (2009) (quoting N.C.R. App. P. 30(e)(3)). Moreover, "[a]n unpublished decision of the North Carolina Court of Appeals is not controlling legal authority." N.C.R. App. P. 30(e)(3).

In any event, Cary Creek's reliance on *Hashemi* is misplaced. That unpublished opinion required this Court to review the trial court's grant of a Rule 12(b)(6) motion to dismiss, a ruling based solely on the pleadings. The only issue we addressed in *Hashemi* was whether the plaintiff had stated a claim. Here, in contrast, we review a grant of summary judgment based on an extensive record, running to eight volumes, and including the EMC/IBT requirement not present in *Hashemi*. Further, in *Hashemi*, we did not consider N.C.G.S. § 143-214.5. Instead, we relied solely on N.C. Gen. Stat. § 143-214.23(a), titled "Riparian Buffer Protection Program: Delegation of riparian buffer protection requirements to local governments," which provides, in pertinent part, that "units of local government may adopt ordinances and regulations necessary to establish and enforce the State's riparian buffer protection requirements." N.C.G.S. § 143-214.23(a) (2007). On the record of the present case, wherein the trial court considered extensive evidence about N.C.G.S. § 143-214.5 in connection with the requirement from the EMC that the Town adopt ordinances creating riparian buffers "similar to or more protective than the Neuse River buffer rule," we reach a different outcome. Any discussion in *Hashemi* which may appear to hold that the Town's riparian buffer ordinances were preempted by State law was *dictum* as that issue was not before this Court.

The concurring opinion states that "the Town's ordinance is invalid" for failure to comply with requirements of the enabling statute, N.C. Gen. Stat. § 160A-387. While acknowledging that Cary Creek failed to make this argument at trial or on appeal, the concurrence nonetheless creates an argument not supported by the record in this case and contrary to our case law and Rules of Appellate Procedure. *See Viar v. N.C. DOT*, 359 N.C. 400, 402, 610 S.E.2d 360, 361, *reh'ing denied*, 359 N.C. 643, 617 S.E.2d 662 (2005) (*per curiam*); N.C.R. App. P. 10(a) ("Except as otherwise provided herein, the scope of review on appeal is confined to a consideration of those assignments of error set out in the record on appeal in accordance with this Rule. . . ."); N.C. R. App. P. 10(c)(1) ("Each assignment of error shall so far as practicable, be confined to a single issue of law; and shall state plainly, concisely and without argumentation the legal basis upon which error is assigned.")

We have held that "[i]t is not the duty of this Court to supplement an appellant's brief with legal authority or arguments not contained therein." *Goodson v. P.H. Glatfelter Co.*, 171 N.C. App. 596, 606, 615 S.E.2d 350, 358, *disc. review denied*, 360 N.C. 63, 623 S.E.2d 582 (2005). When the appellate courts construct an appeal on behalf of an appellant, the "appellee is left without notice of the basis upon which an appellate court might rule." *Viar*, 359 N.C. at 402, 610 S.E.2d at 361. The concurrence is correct that the record does not contain any information about the existence of a map as part of the zoning ordinance. However, the absence of a map in the record does not support statements in the concurrence that the ordinance is invalid because it "does not include an accompanying zoning map, which is controlled and maintained by the Town itself." Since Cary Creek never raised this issue in the trial court or on appeal, the Town had no notice that it should include such a map, if it exists, in its pleadings or in the record on appeal. Further, as noted in Footnote 1, *supra*, "[t]he Town has since revised its ordinances, but the parties have stipulated that Cary Creek's development is subject to the previous ordinance scheme as discussed herein." Thus, the ordinance in the form considered here no longer exists.

Affirmed in part, reversed in part and vacated in part.

Judge HUNTER, Robert C., concurs.

Judge JACKSON concurs by separate opinion.

JACKSON, Judge, concurring in a separate opinion.

I agree with the majority that we are bound to affirm the trial court's grant of summary judgment based upon the arguments presented to us. However, I write separately to note that the Town's ordinance is not in compliance with this Court's precedent that clearly requires a zoning ordinance to include an independent map controlled by the municipality.

This Court previously has explained that

[a] suit to determine the validity of a zoning ordinance is a proper case for a declaratory judgment. In such an action, summary judgment is properly granted where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that any party is entitled to a judgment as a matter of law.

*Laurel Valley Watch, Inc.,* 192 N.C. App. at 396, 665 S.E.2d at 565 (citations and internal quotation marks omitted). "A municipality has no inherent power to zone its territory and possesses only such power to zone as is delegated to it by the enabling statutes." *Nash-Rocky Mount Bd. of Educ. v. Rocky Mount Bd. of Adjustment,* 169 N.C. App. 587, 589, 610 S.E.2d 255, 258 (2005) (quoting *Heaton v. City of Charlotte,* 277 N.C. 506, 513, 178 S.E.2d 352, 356 (1971)). Accordingly, a municipality's power to zone " 'is subject to the limitations of the enabling act.' " *Id.* (quoting *Allred v. Raleigh,* 277 N.C. 530, 540, 178 S.E.2d 432, 437-38 (1971)).

Here, the "enabling act" is North Carolina General Statutes, section 160A-387, which provides, in relevant part, that in order to exercise its zoning authority, a city

shall create or designate a planning board under the provisions of this Article or of a special act of the General Assembly. The planning board shall prepare or shall review and comment upon a proposed zoning ordinance, including both the full text of such ordinance *and maps* showing proposed district boundaries.

N.C. Gen. Stat. § 160A-387 (2005) (emphasis added). This statute, therefore, requires both the written ordinance and an accompanying map:

"[A] zoning ordinance must contain a map as well as detailed textual instructions. First, the text of the ordinance describes what land uses are permitted in each district, what development standards have to be met in that district, and the like. . . . Second, a map places the land in the jurisdiction into various zoning districts. This map is an official part of the zoning ordinance."

*Town of Green Level v. Alamance County,* 184 N.C. App. 665, 670, 646 S.E.2d 851, 855 (2007) (quoting David W. Owens, Introduction to Zoning 23-24 (2d ed. 2001)).

In a case that addressed the parallel statute for counties, we held that "U.S.G.S. [United States Geological Survey] maps could not supply the required map" because "the U.S.G.S. maps were not part of the . . . ordinance, and in fact, were not maintained or controlled by the [municipality]." *Id.* at 672, 646 S.E.2d at 856. Additional statutes that refer to a city's zoning power acknowledge "the zoning map" as

an integral piece of a zoning ordinance—a piece adopted, controlled, and amended by the city in the same manner as its other legislative enactments. *See, e.g.*, N.C. Gen. Stat. § 160A-364 (2005); N.C. Gen. Stat. § 160A-384 (2005).

Here, the Town's ordinance requires a riparian buffer for "all perennial and intermittent streams . . . as indicated on the most recent version of the 1:20,000 scale (7.5 minutes) quadrangle topographic maps prepared by the United States Geological Survey (USGS) . . . ." The record neither includes nor suggests the existence of a zoning map created by the Town as part of the challenged ordinance. Instead, the ordinance relies upon a moving target: "the most recent version" of a map prepared by an entity over which it exerts no control.

Furthermore, the ordinance's reference to a map outside its control significantly reduces the Town's responsibility to provide notice and an opportunity to be heard to those affected by its legislative decisions. Effectively, the ordinance, its requirements, and its prohibitions change any time the U.S.G.S. map changes, but the Town does not give its residents notice of such change or any opportunity to respond, because the wording of its ordinance has remained unchanged. Again, these issues were not raised on appeal, but I believe that the problems associated with an indefinite ordinance warrant attention and discussion.

Based upon the explicit holding of *Green Level* and the mandates of the North Carolina General Statutes, the Town's ordinance is invalid because it does not include an accompanying zoning map, which is controlled and maintained by the Town itself. Nonetheless, it is not the province of this Court to construct arguments for the parties. *Hyatt v. Town of Lake Lure*, 191 N.C. App. 386, 389, 663 S.E.2d 320, 322 (2008) ("It is not the role of this Court to create an avenue of appeal not properly asserted in plaintiff's brief.") (citing *Jeffreys v. Raleigh Oaks Joint Venture*, 115 N.C. App. 377, 380, 444 S.E.2d 252, 254 (1994)). Accordingly, I am bound to affirm the trial court's grant of summary judgment to the Town.