IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-443

Filed 21 January 2026

Brunswick County, No. 23CVS001307-090

LDI SHALLOTTE 179 HOLDINGS, LLC, Plaintiff,

v.

STATE OF NORTH CAROLINA
DEPARTMENT OF ENVIRONMENTAL
QUALITY, DIVISION OF ENERGY
MINERAL, AND LAND RESOURCES, Defendant.

Appeal by Plaintiff from judgment entered 21 February 2024 by Judge Jason

C. Disbrow in Brunswick County Superior Court. Heard in the Court of Appeals 5

November 2024.

*Shipman & Wright, LLP, by Gary K. Shipman and Thomas R. Harvey, III, for Plaintiff-Appellant.*

*Attorney General Jeff Jackson, by Special Deputy Attorney General T. Hill Davis, III, and Assistant Attorney General Carolyn A McLain, for Defendant-Appellee.*

CARPENTER, Judge.

LDI Shallotte 179 Holdings, LLC ("Plaintiff") appeals from the trial court's: 21

February 2024 order (the "Dismissal Order") granting the motion to dismiss filed by

The North Carolina Department of Environmental Quality, Division of Energy

Mineral, and Land Resources ("Defendant"); and 21 February 2024 order (the

"Summary Judgment Order") denying Plaintiff's motion for partial summary

LDI Shallotte 179 Holdings, LLC v. State of N.C. Dep't of Envtl. Quality

*Opinion of the Court*

judgment. On appeal, Plaintiff argues the trial court erred by granting Defendant's motion to dismiss and denying Plaintiff's motion for partial summary judgment. After careful review, we conclude Plaintiff adequately alleged an unconstitutional temporary regulatory taking. Thus, the trial court erred by granting Defendant's motion to dismiss on this basis. The trial court did not err by granting Defendant's motion to dismiss as to Plaintiff's procedural and substantive due process claims. Finally, the trial court properly denied Plaintiff's motion for partial summary judgment. Accordingly, we affirm in part, reverse in part, and remand.

## I. Factual & Procedural Background

On 8 February 2001, Defendant issued a stormwater permit (the "Owendon Permit") to Don Owen covering a parcel of land he planned to develop into a residential subdivision called Owendon Plantation. Owen intended to develop the parcel in five phases and completed phases one and two. Sometime in 2004, Owen decided against developing phases three, four, and five (the "Property") and formally withdrew the Property from the Declaration of Owendon on 1 October 2004. Thereafter, in October 2004, February 2005, and April 2005, Defendant issued three notices of violation ("NOVs") to Owen concerning the Owendon Permit. According to Plaintiff, beyond the continued requirement of the maximum built upon area, the NOVs were for violations associated with activity on phases one and two of Owendon Plantation, not the Property. Owen did not resolve the NOVs and Defendant did not take any action to enforce Owen's compliance.

LDI Shallotte 179 Holdings, LLC v. State of N.C. Dep't of Envtl. Quality

*Opinion of the Court*

Eventually, after a series of conveyances, Plaintiff purchased the Property in May 2021.  Like Owen, Plaintiff planned to develop the Property into a residential subdivision called Summers Walk.  Shortly after purchasing the Property, Plaintiff commenced efforts to obtain a stormwater permit from Defendant.  Pursuant to the Express Review Program, Plaintiff submitted a Request for Express Permit Review and Express Stormwater Narrative,[1] seeking permission to submit an application to modify the Owendon Permit.  On 14 July 2021, Defendant emailed Plaintiff advising that Plaintiff was not eligible for the Express Review Program, because the "current permittee," Owen, was "not the entity requesting the modification" and "transfers cannot be processed" through the Express Review Program.  Defendant purportedly based its decision on a footnote included in the Express Application Review Fee Chart "disallowing applications for properties that in its opinion (a) overlapped with another permit and (b) would not resolve existing compliance issues."

In the correspondence, Defendant provided Plaintiff with a "recommended path forward," which included the following steps: (1) apply to transfer the Owendon Permit to Plaintiff and submit a plan to resolve the NOVs; (2) apply to modify the Owendon Permit to divide the original development plan into two parts, resulting in

---

[1] The Express Review Program was created by our General Assembly.  *See* N.C. Gen. Stat. § 143B-279.13(a) (2023).  Under section 143B-279.13(a), Defendant is required to develop an Express Review Program and "determine the project applications to review from those who request to participate in the program."  *See id.*  The statute further provides that the Express Review Program may be applied to a number of programs, including stormwater permits.  *See id.* at § 143B-279.13(a)(1).

a new Owendon Permit and the need for a separate permit for the Property; (3) apply to obtain a new permit for the Property; and then (4) apply to transfer the new Owendon Permit to the Owendon Home Owners Association. Thereafter, Plaintiff submitted two applications to Defendant: one to transfer the Owendon Permit; and another to obtain a new permit for the Property. Defendant confirmed it received Plaintiff's new permit application, but it did not review or process the new application as Plaintiff had yet to apply to modify the Owendon Permit to divide the original development plan into two parts, per Defendant's "recommended path forward." Then, on 18 November 2021, Defendant requested that Plaintiff assume responsibility for the NOVs. Plaintiff did not respond to the request, and on 20 December 2021, Defendant returned Plaintiff's application to transfer the Owendon Permit to Plaintiff because Plaintiff did not submit a plan for bringing the Owendon Permit into compliance.

On 5 January 2022, Defendant suggested an alternative avenue by which Plaintiff could obtain a stormwater permit for the Property. Defendant advised it could issue a new permit for the Property if Owen submitted an application to transfer and modify the Owendon Permit and, in doing so, resolve the NOVs. Disinclined to take that approach, Plaintiff requested that Defendant modify or revoke the Owendon Permit in accordance with Defendant's discretionary authority

under section 15A N.C. Admin. Code 2H.1040(6).[2]  Defendant elected not to exercise its discretionary authority to modify or revoke the Owendon Permit.

In March 2022, Defendant sent Owen a Transfer Notice Request, asking if he would jointly file, with Plaintiff, an application to transfer the Owendon Permit to Plaintiff.  In the notice, Defendant informed Owen that the NOVs must be resolved as part of the joint application to transfer the Owendon Permit to Plaintiff. Defendant provided Owen with six months to submit a plan for compliance.  Owen informed Defendant that he had no objection to the Owendon Permit being transferred to Plaintiff, but advised that he would not be resolving the NOVs. Ultimately, Owen did not apply to transfer the Owendon Permit to Plaintiff.

On 19 April 2022, Plaintiff filed a petition for contested case hearing in the Office of Administrative Hearings ("OAH").  On 28 June 2022, Defendant filed a motion to dismiss Plaintiff's petition, and on 8 July 2022, Plaintiff filed a response. On 15 August 2022, Administrative Law Judge Donald R. van der Vaart (the "ALJ") denied Defendant's motion to dismiss.  On 19 August 2022, Plaintiff moved for summary judgment.  On 29 August 2022, Defendant filed a response to Plaintiff's motion and also moved for summary judgment.  On 14 September 2022, the ALJ conducted a hearing.

---

[2] The North Carolina Administrative Code provides Defendant's director with the authority to revoke or modify a stormwater permit on sixty days' written notice "for good cause" including "violations of any terms or conditions of the permit . . . ."  *See* 15A N.C. Admin. Code 2H.1040(6)(a) (2023).

On 15 November 2022, the ALJ issued a Final Decision favorable to Plaintiff. The ALJ concluded that Defendant erred at the outset by excluding Plaintiff from the Express Review Program because the footnote upon which Defendant relied was not an enforceable statutory provision or regulation but was a "policy statement" and the "North Carolina Administrative Procedure Act prohibits policy statements masquerading as rules . . . ." The ALJ further concluded that "[i]n the series of proposed 'paths forward' that included as preconditions strategies to correct past violations, [Defendant] erred by withholding review of [Plaintiff's] application." Additionally, the ALJ concluded Defendant did not have authority to impute responsibility of the Owendon Permit NOVs to Plaintiff and also erred by "refus[ing] to exercise its authority to modify the [Owendon Permit] under 15A N.C. Admin. Code 2H.1040(6), which provides for precisely situations like this one." Accordingly, the ALJ ordered that Defendant "revoke [the Property] from the current permit holder," Owen, and "review [Plaintiff's] application for [the Property] under the Express Review Program as a new permit."

On 16 December 2022, Defendant filed a petition for judicial review of the ALJ's Final Decision in superior court (the "trial court"). On 4 January 2023, Plaintiff filed a motion to dismiss Defendant's petition. On 13 February 2023, the trial court conducted a hearing on Plaintiff's motion and dismissed Defendant's petition with

prejudice because it was not timely.[3] Defendant eventually processed Plaintiff's application and issued a new stormwater permit for the Property on or about 1 August 2023, approximately six months after the trial court dismissed Defendant's petition for judicial review.

On 3 August 2023, Plaintiff filed a complaint against Defendant, asserting claims for inverse condemnation, unconstitutional taking, denial of substantive due process, and denial of procedural due process. In addition to damages, Plaintiff requested certain declaratory relief. On 16 October 2023, Defendant filed a motion to dismiss. On 19 January 2024, Plaintiff filed an amended complaint (the "Complaint"). On 29 January 2024, Plaintiff filed a motion for partial summary judgment, arguing the trial court and the parties were bound by the ALJ's Final Decision under the principles of res judicata and collateral estoppel. On 30 January 2024, Defendant filed a motion to dismiss the Complaint. On 1 February 2024, Plaintiff filed a request for judicial notice.

On 12 February 2024, the trial court conducted a hearing on the motions. The trial court denied Plaintiff's motion for partial summary judgment and granted Defendant's motion to dismiss. On 21 February 2024, the trial court entered the Dismissal Order and Summary Judgment Order. In the Summary Judgment Order,

---

[3] "To obtain judicial review of a final decision under this Article, the person seeking review must file a petition in superior court within 30 days after the person is served with a written copy of the decision. A person that fails to file a petition within the required time waives the right to judicial review under this Article." *See* N.C. Gen. Stat. § 150B-45(a) (2023).

the trial court concluded that the ALJ lacked "the authority to decide constitutional matters" and, as a result, his finding and conclusions did "not have any res judicata or collateral estoppel effect." In the Dismissal Order, the trial court concluded the Complaint failed to state claims upon which relief could be granted under Rule 12(b)(6). On 29 February 2024, Plaintiff filed written notice of appeal from both orders.

## II. Jurisdiction

This Court has jurisdiction under N.C. Gen. Stat. § 7A-27(b)(1) (2023).

## III. Issues

The issues are whether the trial court erred by: (1) granting Defendant's motion to dismiss; (2) denying Plaintiff's motion for partial summary judgment; and (3) denying Plaintiff's request for certain declaratory relief.

## IV. Analysis

### A. Motion to Dismiss

First, Plaintiff asserts the trial court erred by granting Defendant's motion to dismiss because the Complaint adequately alleged a temporary taking and procedural and substantive due process violations. Because the Complaint sets forth sufficient allegations of a temporary regulatory taking by Defendant, the trial court erred by granting Defendant's motion to dismiss on this basis. The trial court did not err by granting Defendant's motion to dismiss Plaintiff's due process claims. Accordingly, we affirm in part, reverse in part, and remand.

LDI Shallotte 179 Holdings, LLC v. State of N.C. Dep't of Envtl. Quality

*Opinion of the Court*

### 1. Standard of Review

This Court "review[s] *de novo* an order granting a Rule 12(b)(6) motion to dismiss." *Taylor v. Bank of America, N.A.*, 382 N.C. 677, 679, 878 S.E.2d 798, 800 (2022). "'Under a *de novo* review, [this Court] considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal." *Craig ex rel. Craig v. New Hanover Cnty Bd. of Educ.*, 363 N.C. 334, 337, 678 S.E.2d 351, 354 (2009) (quoting *In Re Greens of Pine Glen Ltd. P'ship.*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003)).

In reviewing a motion to dismiss, "[t]he appellate court, just like the trial court below, considers 'whether the allegations of the complaint, if treated as true, are sufficient to state a claim upon which relief can be granted under some legal theory.'" *Taylor*, 382 N.C. at 679, 878 S.E.2d at 800 (quoting *Bridges v. Parrish*, 366 N.C. 539, 541, 742 S.E.2d 794, 796 (2013)).

### 2. Inverse Condemnation & Unconstitutional Taking

Plaintiff argues it sufficiently alleged claims for inverse condemnation and unconstitutional taking because it set forth facts in the Complaint demonstrating that Defendant's refusal to consider Plaintiff's application for a stormwater permit until Plaintiff resolved the NOVs resulted in Plaintiff being deprived of all economically beneficial or productive use of the Property for approximately two years. We agree.

Before analyzing the sufficiency of the Complaint, we first address Defendant's

argument that Plaintiff did not "clear[] the initial hurdle of showing a final deprivation of a property interest." In essence, Defendant contends that no taking could have occurred because Defendant never formally denied Plaintiff's request for a stormwater permit. Defendant cites two cases in support of its argument: *Cary Creek Ltd. P'ship v. Town of Cary*, 203 N.C. App. 99, 690 S.E.2d 549 (2010) and *Messer v. Town of Chapel Hill*, 125 N.C. App. 57, 479 S.E.2d 221, *vacated on other grounds*, 346 N.C. 259, 485 S.E.2d 269 (1997). These cases, however, are distinguishable for the reasons set forth below.

*Cary Creek* involved a stormwater management ordinance enacted by the Town of Cary which required riparian buffers for lands adjacent to certain enumerated streams and surface waters. 203 N.C. App. at 101, 690 S.E.2d at 551. The plaintiff sought, and was denied, a variance from the riparian buffer requirement. *Id.* at 101, 690 S.E.2d at 551. Thereafter, the plaintiff pursued a certiorari proceeding challenging the Town's denial of its request for a variance and sought declaratory relief that the relevant ordinances were invalid and unenforceable, or in the alternative, that the Town of Cary was required to compensate the plaintiff under principles of inverse condemnation. *Id.* at 100, 690 S.E.2d at 550. The Town of Cary moved to dismiss for lack of subject-matter jurisdiction and failure to state a claim, which the trial court denied. *Id.* at 100, 690 S.E.2d at 550. Then, the Town of Cary and the plaintiff filed cross-motions for summary judgment. *Id.* at 100, 690 S.E.2d at 550. After the trial court granted

LDI Shallotte 179 Holdings, LLC v. State of N.C. Dep't of Envtl. Quality

*Opinion of the Court*

summary judgment in favor of the Town of Cary, the plaintiff appealed, and the Town of Cary cross-appealed, arguing, in pertinent part, that the trial court should have dismissed the plaintiff's inverse condemnation claim for lack of subject-matter jurisdiction. *Id.* at 101, 690 S.E.2d at 551.

Relying on *Messer*, this Court determined that the trial court lacked subject-matter jurisdiction over the plaintiff's inverse condemnation claim because the claim was not ripe for adjudication. *Id.* at 102, 690 S.E.2d at 552 (citing *Messer*, 125 N.C. App. at 61, 479 S.E.2d at 223). We explained the plaintiff's claim was

> based on the theory that *if* the riparian buffer ordinance is upheld as valid and enforceable in the instant case and *if* [the plaintiff] does not prevail in its certiorari proceeding, a taking will have occurred. Because neither of these prerequisite events had occurred at the time [the plaintiff] filed its claim, there had been no taking and there was no concrete controversy ripe for adjudication.

*Id.* at 101, 690 S.E.2d at 552.

*Messer* also involved a challenge to a zoning ordinance which reduced the number of residential units allowed on a portion of the plaintiffs' property. 125 N.C. App. at 60, 479 S.E.2d at 222. The plaintiffs filed a complaint challenging the validity of the zoning ordinance and the Town of Chapel Hill moved to dismiss. *Id.* at 60, 479 S.E.2d at 222. The trial court granted the motion and the plaintiffs appealed to this Court. We concluded the trial court properly dismissed the plaintiffs' takings claim because the plaintiffs failed to allege that they "had applied for a development permit or a variance." *Id.* at 61, 479 S.E.2d at 223. In other words, without a determination

as to how or if the zoning ordinance would affect the plaintiffs' use of their property, the plaintiffs could not maintain an action for inverse condemnation. *Id.* at 61, 479 S.E.2d at 223.

*Cary Creek* and *Messer* support the proposition that to properly allege an unconstitutional regulatory taking based on a zoning ordinance, the plaintiff must first establish that the zoning ordinance will impact the plaintiff's use of the property. *See Cary Creek*, 203 N.C. App. at 101, 690 S.E.2d at 552; *Messer*, 125 N.C. at 61, 479 S.E.2d at 223. To make that determination, it is necessary for the plaintiff to have applied for, and been denied, a variance. Only then can the plaintiff demonstrate that he has been denied all economically beneficial use of his property. *See Nies v. Town of Emerald Isle*, 244 N.C. App. 81, 95, 780 S.E.2d 187, 198 (2015). Absent a variance denial, the effect of the zoning ordinance on the relevant property is speculative at best.

Here, Plaintiff's takings claim, like those in *Cary Creek* and *Messer*, is regulatory in nature. Plaintiff's claim, however, does not concern the validity of a land-use regulation. Instead, Plaintiff attacks Defendant's regulatory action, or inaction, in applying certain land-use regulations. Because Plaintiff challenges a regulatory action rather than a regulation itself, a "final determination," or "final deprivation" as characterized by Defendant, is not required in this context as there are no questions regarding whether a particular land-use regulation will impact the Property. *See Messer*, 125 N.C. at 61, 479 S.E.2d at 223. To the contrary, Plaintiff's

LDI Shallotte 179 Holdings, LLC v. State of N.C. Dep't of Envtl. Quality

*Opinion of the Court*

claim sounds in the adverse effects of Defendant unjustifiably withholding review of Plaintiff's application for a stormwater permit. Because Plaintiff's allegations are ripe for review, *Cary Creek* and *Messer* are distinguishable.

To be clear, Defendant does not argue that Plaintiff's claim is unripe. Instead, Defendant isolates the "final decision" language appearing in *Cary Creek* and *Messer* and contends it is a substantive element of takings claim. In our view, the absence of a definitive denial of Plaintiff's request for a stormwater permit is not necessarily fatal to Plaintiff's takings claim. By Defendant's logic, it could indefinitely hold applicants in bureaucratic purgatory by simply refusing to process their requests for stormwater permits. We decline to adopt a rule permanently foreclosing temporary takings claims after excessive administrative delays. There may be instances where grossly protracted inaction, if pleaded in detail, may well survive a motion to dismiss and warrant discovery.

In sum, while a "final decision about what uses of the property will be permitted" is needed to fulfill the ripeness requirement for a regulatory taking based on a challenge to a regulation or ordinance, *see Messer*, 125 N.C. App. at 61, 479 S.E.2d at 223, *Cary Creek* and *Messer* do not hold that a "final deprivation" is required to establish an unconstitutional temporary taking. Thus, we are not persuaded by Defendant's argument that Plaintiff was precluded from asserting a takings claim because Defendant never formally denied Plaintiff's request for a stormwater permit. Indeed, Defendant eventually processed Plaintiff's application and issued a new

LDI Shallotte 179 Holdings, LLC v. State of N.C. Dep't of Envtl. Quality

*Opinion of the Court*

stormwater permit following the ALJ's Final Decision, but the question remains as to whether Plaintiff is entitled to compensation for the two-year period in which Defendant refused to process Plaintiff's application for a stormwater permit.

Having established Plaintiff was not required to allege that a "final deprivation" occurred, we address the sufficiency of the Complaint. "The fundamental right to property is as old as our state." *Kirby v. N.C. Dep't of Transp.*, 368 N.C. 847, 852–53, 786 S.E.2d 919, 923–24 (2016) (citations omitted). "Property encompasses every aspect of right and interest capable of being enjoyed as such upon which it is practicable to place a money value and includes not only the thing possessed but the right of the owner to the land; the right to possess, use, enjoy and dispose of it, and the corresponding right to exclude others from its use." *Id.* at 853, 786 S.E.2d at 924 (cleaned up). Although "our state constitution does not contain an express constitutional provision against the taking or damaging of private property for public use without payment of just compensation, we have long recognized the existence of a constitutional protection against an uncompensated taking . . . ." *Id.* at 853, 786 S.E.2d at 924 (internal quotation marks and citation omitted).

A temporary taking occurs where a landowner is denied all use of his property for a finite period and "requires just compensation for the use of the land during the period of the taking." *City of Charlotte v. Combs*, 216 N.C. App. 258, 261, 719 S.E.2d 59, 62 (2011) (cleaned up). A regulatory taking may occur if the governmental action "den[ies] an owner all economically beneficial or productive use of the property." *Nies*,

244 N.C. App. at 95, 780 S.E.2d at 198 (internal quotation marks and citation omitted).

"Determining if governmental action constitutes a taking depends upon 'whether a particular act is an exercise of the police power or of the power of eminent domain.'" *Kirby*, 368 N.C. at 854, 786 S.E.2d at 924 (2016) (quoting *Barnes v. N.C. State Highway Comm'n*, 257 N.C. 507, 514 126 S.E.2d 732, 737–38 (1962)). "Under the police power, the government *regulates* property to prevent injury to the public." *Id.* at 854, 786 S.E.2d at 924 (citation omitted). "Police power regulations must be 'enacted in good faith, and ha[ve] appropriate and direct connection with that protection to life, health, and property which each State owes to her citizens.'" *Id.* at 854, 786 S.E.2d at 924 (quoting *City of Durham v. Eno Cotton Mills*, 141 N.C. 615, 642 54 S.E. 453, 462 (1906)) (alteration in original). But "[a]n exercise of police power outside these bounds may result in a taking." *Id.* at 854, 786 S.E.2d at 924.

The governmental action, or rather inaction, relevant here is Defendant's alleged refusal to review and process Plaintiff's application for a stormwater permit. Plaintiff alleged that Defendant's failure to act temporarily deprived Plaintiff's land of all economically-viable use. This falls within the scope of the police power. *See N.C. Dep't of Envtl. Quality v. Dev., LLC*, 259 N.C. App. 597, 607, 816 S.E.2d 232, 239 (2018) (explaining the enforcement of environmental regulations is a "core police power"). An "ends-means" test is used to determine whether an exercise of police power was excessive. *Beroth Oil Co. v. N.C. Dep't of Transp.*, 367 N.C. 333, 351, 757

LDI Shallotte 179 Holdings, LLC v. State of N.C. Dep't of Envtl. Quality

*Opinion of the Court*

S.E.2d 466, 479 (2014). The test involves a "two-part inquiry" as to whether: (1) "the exercise of police power is legitimate, that is, whether the ends sought are within the scope of the power[;]" and (2) "the means chosen to regulate are reasonable." *Id.* at 339, 757 S.E.2d at 472 (cleaned up).

Here, Plaintiff alleged Defendant's failure to review or process its application for a stormwater permit until Plaintiff resolved the NOVs "deprived [Plaintiff] of all reasonable use of its property, and the value of [Plaintiff's property] was substantially impacted, and [Plaintiff] was deprived of the opportunity to make substantial profits." Plaintiff further alleged Defendant's conduct "lacked any real, rational or substantial relationship with health, safety, morals or the general welfare." Plaintiff's allegations were sufficient to allege a temporary regulatory taking as the Complaint sufficiently describes the conduct at issue, explains the conduct was not a proper exercise of the police power, and alleges a denial of the full use of its Property for the relevant time frame. At the motion to dismiss stage, taking all of Plaintiffs allegations as true, Plaintiff sufficiently alleged an unconstitutional temporary taking and a claim for inverse condemnation. *See* N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) (2023). Accordingly, we reverse and remand on this issue.

### 3. Due Process Claims

Plaintiff also argues Defendant's refusal to process its stormwater permit application constituted a violation of its procedural and substantive due process rights. We disagree.

LDI Shallotte 179 Holdings, LLC v. State of N.C. Dep't of Envtl. Quality

*Opinion of the Court*

"The Fourteenth Amendment states that the government shall not 'deprive any person of life, liberty, or property, without due process of law.'" *Clayton v. Branson*, 170 N.C. App. 438, 451, 613 S.E.2d 259, 269 (2005) (quoting U.S. Const. amend. XIV, § 1). "Not every property interest requires procedural due process. A protected property interest arises when one has a legitimate claim of entitlement as decided by reference to state law." *Dyer v. Bradshaw*, 54 N.C. App. 136, 139, 282 S.E.2d 548, 550 (1981) (citation omitted). "While the United States Supreme Court has consistently held that some form of hearing is required prior to a final deprivation of a 'protected' property interest, the exact nature and mechanism of the required procedure will vary based upon the unique circumstances surrounding the controversy." *Peace v. Employment Sec. Comm'n*, 349 N.C. 315, 322, 507 S.E.2d 272, 278 (1998) (citation omitted).

As stated in *Godrey Lumber Co., Inc. v. Howard*, Defendant "could only have committed an unconstitutional deprivation if it failed to provide due process to [P]laintiff." 151 N.C. App. 738, 741, 566 S.E.2d 825, 827 (2002). In *Godrey*, this Court determined that through the Administrative Procedure Act and the contested case proceeding, the plaintiff received "constitutionally adequate due process of law." *Id.* at 740, 566 S.E.2d at 826. Similarly here, Plaintiff received "constitutionally adequate due process of law" because it obtained review of Defendant's actions in the contested case hearing in the OAH and beyond. *See id.* at 740, 566 S.E.2d at 826. Accordingly, the trial court did not err by dismissing Plaintiff's procedural due

process claim.

"In general, substantive due process protects the public from government action that unreasonably deprives them of a liberty or property interest." *Town of Beech Mt. v. Genesis Wildlife Sanctuary, Inc.,* 247 N.C. App. 444, 459, 786 S.E.2d 335, 346 (2016) (cleaned up). To establish an as-applied violation of substantive due process, the plaintiff " 'must demonstrate (1) that [it] had property or a property interest; (2) that the state deprived [it] of this property or property interest; and (3) that the state's action falls so far beyond the outer limits of legitimate governmental action that *no process* could cure the deficiency.' " *Id.* at 460, 786 S.E.2d at 347 (quoting *MLC Auto., LLC v. Town of S. Pines*, 532 F.3d 269, 281 (4th Cir. 2008)). In deciding whether regulatory action "has no foundation in reason and is a mere arbitrary or irrational exercise of power having no substantial relation to the public health, the public morals, the public safety or the public welfare in its proper sense," we consider, among other factors, whether: "(1) the [regulatory] decision is tainted with fundamental procedural irregularity; (2) the action is targeted at a single party; and (3) the action deviates from or is inconsistent with regular practice." *MLC Auto,* 523 F.3d at 281.

Here, Plaintiff did not allege that Defendant's regulatory decision making was targeted at Plaintiff or that Defendant's actions were inconsistent with its regular practice. Under these circumstances, Plaintiff did not adequately plead facts tending to show that Defendant's conduct "[fell] so far beyond the outer limits of legitimate

governmental action that *no process* could cure the deficiency." *See Town of Beech Mt.*, 247 N.C. App. at 460, 786 S.E.2d at 347 (internal quotation marks and citation omitted). Thus, the trial court did not err in dismissing Plaintiff's substantive due process claim.

### B. Partial Summary Judgment

Next, Plaintiff asserts the trial court erred by denying its motion for partial summary judgment because Defendant should have been precluded from litigating issues raised and resolved by the ALJ under the principles of res judicata and collateral estoppel. We disagree.

### 1. Standard of Review

"We review a trial court order granting or denying a summary judgment motion on a *de novo* basis, with our examination of the trial court's order focused on determining whether there is a genuine issue of material fact and whether either party is entitled to judgment as a matter of law." *Bartley v. City of High Point*, 272 N.C. App. 224, 227, 846 S.E.2d 750, 754 (2020) (internal quotation marks and citation omitted). "In doing so, we view the evidence in the light most favorable to the nonmoving party and draw all inferences of fact against the movant and in favor of the nonmovant." *Id* at 227, 846 S.E.2d at 754. "Summary judgment is appropriate if: (1) the non-moving party does not have a factual basis for each essential element of its claim; (2) the facts are not disputed and only a question of law remains; or (3) if the non-moving party is unable to overcome an affirmative defense offered by the

moving party." *Hillsboro Partners, LLC v. City of Fayetteville*, 226 N.C. App. 30, 35, 738 S.E.2d 819, 823 (2013) (citation omitted).

### 2. ALJ Jurisdiction

We first address Defendant's assertion that res judicata and collateral estoppel cannot apply because the ALJ lacked jurisdiction to determine Plaintiff's "constitutional claims." It is a "well-settled rule that a *statute's constitutionality* shall be determined by the judiciary, not an administrative board." *Carolinas Med. Ctr. Emp'rs & Carriers*, 172 N.C. App. 549, 553, 616 S.E.2d 588, 591 (2005) (emphasis added). Here, Plaintiff did not challenge the constitutionality of a statute or regulation during the contested case hearing, instead pursuing other issues— including those explicitly listed in section 150B-23 (a)(1)–(5). *See* N.C. Gen. Stat. § 150B-23 (a)(1)–(5) (2023) (providing the proper procedure and pleading requirements for commencement of a contested case hearing). Thus, the precedent offered by Defendant on this issue, which concerns challenges to an ALJ's determination that a particular statute was unconstitutional, are distinguishable. In our view, the ALJ had jurisdiction to consider the specific issues Plaintiff alleged in its petition for contested case hearing. *See id.*

### 3. Res Judicata & Collateral Estoppel

Res judicata and collateral estoppel "generally appl[ly] to administrative decisions." *Hillsboro Partners, LLC*, 226 N.C. App. at 36, 738 S.E.2d at 824; *see Intersal, Inc. v. Hamilton,* 373 N.C. 89, 107, 834 S.E.2d 404, 417 (2019) ("The fact that

the original claim arose in a quasi-judicial administrative hearing does not preclude the applicability of res judicata.") (citation omitted). With respect to issue preclusion, "[e]ssential issues of fact which have been litigated and determined by an administrative decision [are] conclusive between the parties in a subsequent action." *Maines v. City of Greensboro*, 300 N.C. 126, 133, 265 S.E.2d 155, 160 (1980). But whether an administrative decision will be given collateral estoppel or res judicata effect "depends on its nature." *Catawba Memorial Hosp. v. N.C. Dept. of Human Res.*, 112 N.C. App. 557, 565, 436 S.E.2d 390, 394 (1993) (internal quotation marks and citation omitted). Collateral estoppel or res judicata will not apply to a decision that was "purely administrative," but may apply if the decision was "quasi-judicial." *Hillsboro Partners, LLC*, 226 N.C. at 36, 738 S.E.2d at 824 (citing *In re Mitchell*, 88 N.C. App. 602, 605, 364 S.E.2d 177, 179 (1988)). "Though the distinction between a 'quasi-judicial' determination and a purely 'administrative' decision is not precisely defined, [our] courts have consistently found decisions to be quasi-judicial when the administrative body adequately notifies and hears before sanctioning, and when it adequately provides under legislative authority for the proceeding's finality and review." *In re Mitchell*, 88 N.C. App. at 605, 364 S.E.2d at 179.

Here, the ALJ's Final Decision was not purely administrative because the parties were notified of the proceedings beforehand and were provided an opportunity to appeal pursuant to section 150B-45. Thus, the OAH proceeding satisfied both requirements of a quasi-judicial determination and the ALJ's Final Decision may

have res judicata or collateral estoppel effect.

Having determined the contested case hearing was quasi-judicial, we address the applicability of res judicata and collateral estoppel. "Under the doctrine of res judicata or 'claim preclusion,' a final judgment on the merits in one action precludes a second suit based on the same cause of action between the same parties or their privies." *Intersal*, 373 N.C. at 107, 834 S.E.2d at 417 (citation omitted). For res judicata to apply, a litigant must show: "(1) final judgment on the merits in an earlier lawsuit; (2) an identity of the cause of action in the prior suit and in the later suit; and (3) an identity of parties or their privies in both suits." *Nicholson v. Jackson Cty. Sch. Bd.*, 170 N.C. App. 650, 654, 614 S.E.2d 319, 322 (2005) (citation omitted). Although we often use the terms "claim" and "cause of action" interchangeably in our jurisprudence, the focus of res judicata analysis is on the underlying claim or claims supporting the legal theories or causes of action. *See Epcon Homestead, LLC v. Town of Chapel Hill*, 294 N.C. App. 653, 657, 905 S.E.2d 83, 87 (2024) ("Although seemingly synonymous, claims and causes of action are distinct."). "[A] claim is a pattern of allegations that may, or may not, support a cause of action." *Id.* at 657, 905 S.E.2d at 87. "A cause of action, on the other hand, is the legal theory or 'vehicle for pursuing a claim.'" *Venters v. City of Raleigh*, ___ N.C. App. ___, ___, ___ S.E.2d ___, ___ (2025) (quoting *Epcon Homestead LLC*, 294 N.C. App. at 657, 905 S.E.2d at 87)). The distinction may be material in this context because "[w]hen a party asserts a previously adjudicated claim in a later lawsuit, it is 'clear that subsequent actions

which attempt to proceed by asserting a new legal theory or by seeking a different remedy are prohibited under principles of res judicata.'" *Epcon Homestead LLC*, 294 N.C. App. at 657, 905 S.E.2d at 87 (emphasis omitted) (quoting *Bockweg v. Anderson*, 333 N.C. 486, 494, 428 S.E.2d 157, 163 (1993)).

> For collateral estoppel to apply, the following elements must be met:

> > (1) the issues to be concluded are the same as those involved in the prior action; (2) the issues in the prior action were raised and actually litigated; (3) the issues were material and relevant to the disposition of the prior action; and (4) the determination made of those issues in the prior action was necessary and essential to the resulting judgment.

*Nicholson*, 170 N.C. App. at 655, 614 S.E.2d at 322 (citation omitted).

"The primary difference between the two doctrines is res judicata precludes a party 'from bringing a subsequent action based on the 'same claim' as that litigated in an earlier action,' while collateral estoppel 'precludes the subsequent adjudication of a previously determined issue, even if the subsequent action is based on an entirely different claim.'" *Farmers & Merchs. Bank v. Henley*, ___ N.C. App. ___, ___, 920 S.E.2d 886, 893 (2025) (emphasis omitted) (quoting *Whitacre P'ship v. Biosignia Inc.*, 358 N.C. 1, 15, 591 S.E.2d 870, 880 (2004)). "Though distinct, both doctrines 'advance the twin policy goals of protecting litigants from the burden of relitigating previously decided matters and promoting judicial economy by preventing needless litigation.'" *Id.* at ___, 920 S.E.2d at 893 (quoting *Whitacre*, 358 N.C. at 15–16, 691 S.E.2d at 880)).

Issue preclusion has potential offensive and defensive applications. Defensive use occurs where a "stranger to the judgment, ordinarily the defendant in the second action, 'relies upon a former judgment as conclusively establishing in his favor an issue which he must prove as an element of his defense.'" *Shehan v. Gaston County*, 190 N.C. App. 803, 807, 661 S.E.2d 300, 303 (2008) (quoting *Mays v. Clanton*, 169 N.C. App. 239, 241, 609 S.E.2d 453, 455 (2005)). Offensive use occurs where the plaintiff "seeks to foreclose the defendant from relitigating an issue that the defendant has previously litigated unsuccessfully in another action . . . ." *Rymer v. Estate of Sorrells*, 127 N.C. App. 266, 269, 488 S.E.2d 838, 840 (1997).

When a plaintiff utilizes collateral estoppel offensively, as is the case here:

> [It] might be unfair to a defendant, if among other things: (1) the defendant had little incentive to defend vigorously in the first action; (2) the judgment relied upon as the basis for the estoppel is inconsistent with previous judgments; and (3) the second action affords the defendant procedural opportunities unavailable in the first action that could readily cause a different result.

*Id.* at 270, 488 S.E.2d at 841 (citing *Parklane Hosiery Company v. Shore*, 439 U.S. 322, 330–31, 99 S. Ct. 645, 651–52, 58 L. Ed. 2d 552, 561–62 (1979)).

Here, in its petition for contested case hearing, Plaintiff's primary claim was its entitlement to a stormwater permit. In support of this claim, Plaintiff made several allegations consistent with section 150B-23. *See* N.C. Gen. Stat. § 150B-23(a)(1)–(5). Plaintiff alleged Defendant: (1) deprived Plaintiff of property; (2) exceeded its authority or jurisdiction; (3) acted erroneously; (4) failed to use proper

procedure; (5) acted arbitrarily or capriciously; (6) failed to act as required by law or rule; and (7) otherwise substantially prejudiced Plaintiff's rights. The parties are the same as the OAH proceeding and are positioned in the same adversarial roles. The ALJ issued a Final Decision, but the contested case hearing did not adjudicate the types of issues raised in the Complaint—whether Defendant's alleged refusal to process Plaintiff's application for a stormwater permit constituted a taking without the payment of just compensation, an inverse condemnation, or a violation of due process. Though Plaintiff alleged Defendant deprived Plaintiff of property and substantially prejudiced Plaintiff's rights, the trial court action was not a "second suit based on the same cause of action," *see Intersal*, 373 N.C. at 107, 834 S.E.2d at 417 (citation omitted), because the legal theories Plaintiff asserted in its Complaint— inverse condemnation, unconstitutional taking, and violations of procedural and substantive due process—were not the subject of the prior action. In fact, section 150B-23(a)(1)–(5) seemingly acts to limit the issues a petitioner may bring forth when commencing a contested case hearing. *See* N.C. Gen. Stat. § 150B-23(a)(1)–(5). Thus, res judicata did not apply and the trial court properly denied Plaintiff's motion for partial summary judgment on this basis.

Plaintiff's collateral estoppel argument also fails. Assuming without deciding that the elements of collateral estoppel were present, the trial court did not err by denying Plaintiff's motion for partial summary judgment on this basis because it would have been "unfair" to allow Plaintiff to use the doctrine offensively under the

facts and circumstances of this case. *See Rymer*, 127 N.C. App. at 270, 488 S.E.2d at 841. The ALJ lacked the authority to award Plaintiff money damages, a remedy that is available in the current action. Because Defendant "had little incentive to defend vigorously" in the OAH proceeding, the trial court did not err by denying Plaintiff's motion for partial summary judgment based on collateral estoppel. *See id.* at 270, 488 S.E.2d at 841. Accordingly, we affirm the trial court's denial of Plaintiff's motion for partial summary judgment.

### C. Declaratory Judgment

Lastly, Plaintiff argues it was entitled to declaratory relief as to "the legal applicability of the doctrines of res judicata and collateral estoppel to the factual determinations set forth in the Final Decision." Because the trial court properly determined that neither doctrine applied, Plaintiff was not entitled to declaratory relief. Accordingly, we affirm.

### V. Conclusion

The trial court partially erred by granting Defendant's motion to dismiss as to Plaintiff's inverse condemnation and unconstitutional temporary takings claim but did not err by granting Defendant's motion to dismiss the due process violations. The trial court did not err by denying Plaintiff's motion for partial summary judgment or request for declaratory judgment. Accordingly, we affirm in part, reverse in part, and remand.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

LDI Shallotte 179 Holdings, LLC v. State of N.C. Dep't of Envtl. Quality

*Opinion of the Court*

Judges STROUD and ZACHARY concur.